## `UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

Lexiford Properties, LLC, Waterton Properties, LLC,
And Tzedek Company, LLC,

     *Plaintiffs,*                            Case No: 22-

v.

David Moses, and
Henry Nirenberg,

     *Defendants,*
_____

Kenneth R. Beams (P63248)
Counsel for the Plaintiffs
2145 Crooks, Suite 220
Troy, Michigan 48084
248-396-3987
kennethbeams@gmail.com

_____

## **COMPLAINT**

     Lexiford Properties, LLC, Waterton Properties, LLC, and Tzedek

Company, LLC, (collectively the "Plaintiffs") for their Complaint state as follows:

### **JURISDICTION AND VENUE**

     1.    Lexiford Properties, LLC, Waterton Properties, LLC, and Tzedek

Company, LLC (the "Plaintiffs"), are each Michigan limited liability companies that

own one parcel of real estate in Michigan.

     2.    Lexiford Properties owns a single-family residence located at 7382

Yale, Lexington, Michigan 48450.

3.    Waterton Properties owns a single-family residence located at 3994 Arcadia Park Drive, Waterford, Michigan 48328.

4.    Tzedek Company owns a single-family residence located at 10095 LaSalle Blvd., Huntington Woods, Michigan 48070.

5.    David Wolkinson is an individual who is a Florida resident and currently resides in Miami-Dade County, Florida.  He is the managing member of each of the Plaintiffs.

6.    David Moses is a Michigan resident who currently resides in Oakland County. Henry Nirenberg is a Michigan resident who currently resides in Oakland County.

7.    The Court has jurisdiction over this matter based on the diversity of citizenship of the parties and the Plaintiffs seek damages in excess of $100,000.00.

8.    Venue is proper in this Court.

## BACKGROUND

9.    In the Spring of 2022, Rebecca Moses approached David Wolkinson, the sole member of the Plaintiffs, about purchasing the Properties from her.

10.    At that time, Rebecca Moses had been going through a divorce case with her husband the Defendant David Moses.

11.    At that time, Rebecca Moses was experiencing severe financial hardship because her husband succeeded in cutting off almost all funds to her and

that she had received less than $25,000.00 in the preceding 18 months (with no more financial relief expected and none subsequently delivered).

12.     Indeed, Rebecca had been forced to move out of two different rental homes (due to her inability to pay the rent) and was living with her parents as her husband (with his full and total control of the marital assets) refused, despite the status quo order, to pay the rent on the homes she was living in.

13.     Rebecca Moses further represented that her credit score had dropped approximately 300 points, because David Moses had stopped payment on her credit cards and stopped making payments on a variety of assets that he maintained possession of, while the debts remained in her name.

14.     The final straw for her was when Rebecca Moses received notice that 2 of the 3 Properties were in substantial arrears in their mortgage payments. One of the homes was in foreclosure and the other was about to fall into foreclosure. Exhibit A.

15.     Given Rebecca Moses' dire financial situation and without any source of income or money, she pushed the Plaintiffs to buy the Properties.

16.     As part of their discussions, Rebecca Moses represented to David Wolkinson that nothing in her divorce proceeding prohibited her from selling the Properties to the Plaintiffs.

17.    In reliance on Rebecca Moses's representations, on or about May 5, 2022, the Plaintiffs each entered into a separate purchase agreement with Rebecca Moses for the purchase/sale of the three properties that are the subject of this lawsuit (the "Properties").  *See* Purchase Agreement, Exhibit B.

18.    The prices represented in the individual purchase agreement amounts to the monies owed for collective property payoffs.

19.    On May 31, 2022, the Plaintiffs closed on the purchase of the Properties from Rebecca Moses.  Proceeds from the purchase were used to pay off outstanding mortgages.  *See* Deeds, Exhibit C.

20.    After closing, the Plaintiffs received the keys for the Lexington Property and the Waterford Property and took possession of them.  These houses were vacant at that time.

21.    David Moses was living in the Huntington Woods Property so the Plaintiffs were not yet able to take possession of that property immediately after closing.

22.    After the Plaintiffs took possession of the Waterford Property, Defendant David Moses illegally broke into that property and changed the locks.

23.    Defendant David Moses also illegally moved a friend into the Waterford Property and they created a fraudulent lease to make it appear as if David

Moses' friend had been leasing the Waterford Property prior to Waterton Property's purchase of it.

24.     On June 3, 2022, Defendant David Moses unlawfully and without justification filed a Lis Pendens and/or a Claim of Interest against each of the Properties.  *See* Exhibit D.

25.     Moreover, Defendant David Moses been making false claims that he is the "owner" of the Properties.

## A Receiver is Appointed Over the Properties Without Notice to the Plaintiffs or Wolkinson

26.     Rebecca Moses' divorce proceeding has been sent to arbitration with Kurt Schnelz as the arbitrator (the "Arbitrator").

27.     As part of the arbitration, the Arbitrator appointed Defendant Henry Nirenberg as special master.

28.     Defendant David Moses, without constitutionally required notice to the Plaintiffs or Wolkinson, filed a motion in the arbitration proceeding seeking a receiver over the Properties (the "Receiver Motion").  *See* Exhibit E

29.     The Receiver Motion sought to give Defendant Nirenberg power over the Properties, including powers that are only exercised by the owner of real estate.

30.     The Arbitrator granted the relief requested in the Receiver Motion by the Defendant David Moses.

31.     The Defendant David Moses subsequently moved to have the Circuit Court enter the relief granted in the Receiver Motion.

32.     Again, David Moses failed to provide notice and opportunity to object to the entry of the Receiver Motion to the Plaintiffs.

33.     The Circuit Court entered the Order Appointing Receiver on August 10, 2022.  *See* Order, Exhibit F.

34.     The Receiver Order provides for, among other things, that Defendant Nirenberg was appointed as Receiver over the Properties.  The Receiver Order further provides that Defendant Nirenberg is entitled to:

    (i)  All proceeds relating to the Properties; and

    (ii) All causes of action arising from the sale or disposition of the Properties.

35.     Defendant Nirenberg is further entitled to sell, encumber, take possession of, lease, liquidate the Properties.  *See* Exhibit F.

36.     In short, Defendant Nirenberg was granted rights and powers with respect to the Properties as if he owned the Properties, in denial of and inconsistent with the Plaintiffs' ownership interest in the Properties all without notice and opportunity to object provided to the Plaintiffs.

## COUNT I
## SLANDER OF TITLE

37.    Plaintiffs restate and incorporate by reference the allegations in the preceding paragraphs as though fully set forth in this complaint.

38.    On June 3, 2022, Defendant David Moses illegally recorded two Notices of Lis Pendens with the Oakland County Register of Deeds (recorded in Liber 57816, Page 274, and Liber 57816, Page 275, Oakland County Records).

39.    On June 3, 2022, Defendant David Moses illegally recorded a Claim of Interest with the Sanilac County Register of Deeds (recorded in Liber 1528, Page 112 (Sanilac County Register Records).

40.    The Notices of Lis Pendens and the Claim of Interest recorded by Defendant David Moses have rendered the Properties unmarketable.

41.    Defendant David Moses filed the Notices of Lis Pendens and the Claim of Interest for the express purpose of preventing Plaintiffs from selling the Properties.

42.    The recordings of the Notices of Lis Pendens and the Claim of Interest are not authorized by law.

43.    As a direct result of the recordings of the Notice of Lis Pendens and of the Claim of Interest, the Plaintiffs have damages in excess of $100,000.00 because that recording either delayed or prevented the sale of the Properties; the Plaintiffs lost their ability to invest the proceeds from the sale and receive earnings on the

proceeds; and the Plaintiffs have incurred substantial attorney fees and other costs as a direct result of the actions taken by Defendant David Moses.

**WHEREFORE**, the Plaintiffs respectfully request that this Honorable Court that it enter a Judgment in its favor and against David Moses in an amount in excess of $100,000.00, plus all costs, interest and attorney fees.

## COUNT II: QUIET TITLE

44.     The Plaintiffs restate and incorporate each allegation contained in the preceding paragraphs as though fully restated herein.

45.     Defendant Nirenberg, as receiver, claims an interest in the Properties superior to that of the Plaintiffs by virtue of the Receiver Order.

46.     The Receiver Order is void and unenforceable because it was entered without notice and opportunity for the Plaintiffs to object.

47.     Moreover, Defendant Nirenberg has no interest in the Properties and his claim to them must be quieted.

**WHEREFORE**, the Plaintiffs respectfully requests that this Honorable Court enter an order declaring that Defendant Nirenberg, acting as the receiver under the Receiver Order, has no interest in the Properties and grant all other relief that is just and equitable.

## COUNT III—DECLARATORY JUDGMENT DEFENDANT MOSES

48.     Plaintiffs restate and incorporate by reference the allegations in the preceding paragraphs as though fully set forth in this complaint.

49.     The Defendant David Moses claims an interest in the Properties as set forth in the Notice of Lis Pendens and the Claim of Interest.

50.     The Plaintiffs, on the other hand, contend that Defendant David Moses has no interest in the Properties as they purchased the Properties in good faith and for reasonably equivalent value.

51.     The Plaintiffs seek an order declaring they own the Properties free and clear from any and all claims asserted against them by Defendant David Moses.

**WHEREFORE,** Plaintiffs request an order from this Court that the Plaintiffs own the Properties free and clear of any and all claims asserted against them by Defendant David Moses.

## COUNT IV: TRESPASSING AGAINST MOSES

52.     Plaintiffs restate and incorporate by reference the allegations in the preceding paragraphs as though fully set forth in this Complaint.

53.     Defendant David Moses and one or more of his agents trespassed onto the Properties without the Plaintiffs' knowledge and permission by breaking into them as described in this Complaint.

54.     Defendant David Moses' trespasses have caused the Plaintiffs damages, including but not limited to, diminution in the value of the Properties, loss of rental income, inability to transfer the Properties, and other damages associated with his trespassing.

**WHEREFORE**, the Plaintiffs respectfully request that this Honorable Court that it enter a Judgment in its favor and against David Moses in an amount in excess of $100,000.00, plus all costs, interest and attorney fees.

Respectfully submitted,

KENNETH R. BEAMS, PLLC

/s/ Kenneth R. Beams
Kenneth R. Beams (P63248)
Counsel for the Plaintiffs
2145 Crooks, Ste. 220
Troy, Michigan 48084
Dated:  September 20, 2022                     (248) 396-3987

# EXHIBIT A

03/07/2022

REBECCA M MOSES
10095 LASALLE BLVD,
HUNTINGTON WOODS, MI 48070

Re:    Note: 4299103885
       Past Due: 02/18/2026; Amount Past Due 1,834.16; 41 Days Past Due
       Total Amount Due: 1,974.31 (90.15 Late Charge & 50.00 Fee Balance) Daily Rate 30.81

Dear REBECCA M MOSES,

        The matter of your Past Due loan has been referred to the undersigned for appropriate action.  The
above balance may not reflect all late fees and accrued interest or scheduled payments due.
        As of the date of this letter, interest continues to accrue daily as stated above.  Your failure to pay your
obligation to the Bank as promised can constitute a material default under your loan obligations.  This causes
you needless costs and affects your credit standing.
        As a consequence, under the terms of those obligations, the Bank may declare a default, accelerate the
loan and take action to enforce its rights.  This includes:   foreclose upon your second/first mortgage which
serves as collateral to insure payment of your loan or use legal process to file suit, obtain a judgment and seek
recovery of the obligation, accrued interest and legal fees, expenses and costs.  If payment or mutual agreement
to resolve this matter is not accomplished within 10 calendar days of the date of this letter, I will advise the
Bank to seek enforcement of its' rights.
        In compliance with the signed loan documents Level One Bank may exercise its right to evaluate the
value of our collateral. You may be contacted by an appraiser to coordinate and schedule an appointment.  This
appointment will include an exterior as well as an interior inspection.   The appraiser will comply if
arrangements need to be made after business hours.  Please contact Level One Bank if you have questions or
concerns regarding this matter.

        Please contact your loan officer or the undersigned.  We trust you will act accordingly.

                                        Regards,

                                        Jimmie Sue Lasky
                                        248-205-1454

cc: File

"IF YOU ARE IN BANKRUPTCY, OR IF YOU HAVE HAD DEBTS DISCHARGED IN BANKRUPTCY, THIS NOTICE IS FOR
INFORMATION ONLY AND NOT AN ATTEMPT TO COLLECT."
SEE THE ATTACHED NOTICE:

 **roundpoint**

P.O. Box 19409
Charlotte, NC 28219-9409
Statement Enclosed

**Mortgage Billing Statement**
Statement Date 05/18/2022



+ 0647290 000007754 09RP01 0945232

REBECCA M MOSES
29250 CREEK BEND DR
FARMINGTON HILLS MI 48331-2608

### YOUR PAYMENT INFORMATION

| | |
|---|---|
| Loan Number: | 2002740294 |
| Payment Due Date: | 06/01/2022 |
| Amount Due* | $4,264.04 |

If payment is not received by 06/16/2022, a late fee of $14.30 will be charged.
*This amount reflects the total amount needed to cure all past due payments and fees, charges, and advances assessed to the loan as of the date of this statement. This is not a payoff amount. Other fees, charges, or advances may have accrued that are not presented in this billing cycle. Contact us to discuss assistance options that may be available to you or to obtain a reinstatement quote.

877-426-8805 | ServicingHelp@RoundPointMortgage.com

Property Address:
7382 YALE RD
LEXINGTON, MI 48450

| YOUR ACCOUNT INFORMATION | | YOUR PAST PAYMENT BREAKDOWN† | | | EXPLANATION OF AMOUNT DUE† | |
|---|---|---|---|---|---|---|
| Loan Due Date: | 02/01/2022 | | **LAST** | **YTD** | Principal: | $141.05 |
| Outstanding Principal: | $67,552.00 | Principal: | $0.00 | $138.80 | Interest: | $216.33 |
| Deferred Principal: | $0.00 | Interest: | $0.00 | $218.58 | Escrow (Taxes and Insurance): | $441.44 |
| Interest Rate: | 3.875% | Escrow (Taxes & Insurance): | $0.00 | $512.81 | Additional Monthly Amounts**: | $0.00 |
| Prepayment Penalty: | No | Additional Monthly Amounts: | $0.00 | $0.00 | Regular Monthly Payment: | $798.82 |
| Escrow Balance: | -$1,045.39 | Charges and Fees: | $0.00 | $0.00 | Unpaid Late Charges: | $57.20 |
| | | Partial Payment (Unapplied)*: | $0.00 | $0.00 | Charges and Fees**: | $85.00 |
| | | Total: | $0.00 | $870.19 | Past Due Payment(s): | $3,338.02 |
| | | | | | Suspense Balance: | -$0.00 |
| | | | | | Amount Due* | $4,264.04 |

*Important Information About Partial Payments†
Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

†Important Information about Temporary Loss Mitigation Payment Plans
Please note: If you have agreed to a temporary loss mitigation payment plan, your payments are applied to the account according to the terms of the Note, not the terms of the temporary loss mitigation payment plan.

**See back
*This amount reflects the total amount needed to cure all past due payments and fees, charges, and advances assessed to the loan as of the date of this statement. This is not a payoff amount. Other fees, charges, or advances may have accrued that are not presented in this billing cycle. Contact us to discuss assistance options that may be available to you or to obtain a reinstatement quote.

### YOUR TRANSACTION ACTIVITY BETWEEN 04/20/2022 AND 05/18/2022

| Date Paid | Description | Principal | Interest | Escrow | Additional Monthly Payment | Charges and Fees | Partial Payment (Unapplied) | Total |
|---|---|---|---|---|---|---|---|---|
| 05/09/2022 | Property Inspection and Maintenance Expense | $0.00 | $0.00 | $0.00 | $0.00 | -$15.00 | $0.00 | -$15.00 |

### DELINQUENCY INFORMATION

**You are late on your mortgage payments.** Your account became delinquent on 02/01/2022. Failure to bring your loan current may result in fees and foreclosure - the loss of your home. Your loan is currently in an active Loan Modification Loss Mitigation Plan. As of 05/18/2022, you are 106 days delinquent on your mortgage loan.

**If You Are Experiencing Financial Difficulty:** See back for information about mortgage counseling or assistance.

Recent Account History
* Payment Due 02/01/2022: Unpaid Amount of $870.19
* Payment Due 03/01/2022: Unpaid Amount of $870.19
* Payment Due 04/01/2022: Unpaid Amount of $798.82
* Payment Due 05/01/2022: Unpaid Amount of $798.82
* Current Payment Due 06/01/2022: $798.82
Total Amount Due: $4,264.04. This amount reflects what you must pay to bring your loan current as of the date of this statement.

### SIGN UP FOR ONLINE BILLING STATEMENTS

 You can securely access your billing statements online at your convenience 24/7

 You will receive email notifications when your billing statement is being prepared

 You can download your statements and save them for your records



# EXHIBIT B

**AMENDED AGREEMENT TO PURCHASE REAL ESTATE**

AGREEMENT dated MAY 31, 2022 ("Contract Date") by and between the following parties:

Rebecca Moses ("SELLER"), and The Tzedek Group LLC, on behalf of a(n) entity(ies) to be named later ("BUYER(s)")

The parties agree that the Seller will sell and Buyer will buy the following property at the terms of this amended agreement.

## 1. SUBJECT PROPERTY:

**See Addendum A for list of homes**

This sale includes the above-described real property and shall also include all personal property and fixtures, including attached lighting fixtures, ceiling fans, drapery, mailbox, sheds, fences, appliances, bidets and installed landscaping.

## 2. TOTAL PURCHASE PRICE: $1,000,000

## 3. PAYMENT METHOD FOR PURCHASE: Cash Sale

## 4. TITLE & CLOSING: Closing shall take place, on May 31, 2022. Seller shall convey title by General Warranty Deed, subject to taxes, existing zoning, covenants, restrictions and easements of record. Seller shall furnish buyer with a title policy without standard exceptions. If title evidence or survey reveal any defects which render the title unmarketable, Buyer or closing agent will have seven (7) days from receipt of title commitment and survey to notify Seller of such title defects. Seller agrees to use reasonable diligence to cure such defects at Seller's expense within 30 days. If Seller is unable to deliver marketable title or if Buyer is dissatisfied with the title commitment issued by the Title company for any reason, Buyer will have the right to terminate this agreement without Default penalty and shall be entitled to the immediate return of all Money paid.

## 5. CLOSING COSTS: Buyer and Seller shall pay the following costs at closing:
· Transfer taxes to be paid by SELLER
· Title Insurance Policy to be paid by SELLER
· Recording Fee to be paid by BUYER
· Closing Fee to be paid by BUYER

## 6. PRORATIONS: All property taxes, association fees, and assessments due and payable on or before date of closing, or which are confirmed, but not yet due or payable as of the date of closing, shall be paid by Seller at closing. Current taxes shall be prorated and adjusted as of date of closing in accordance with due date of municipality or taxing unit(s) in which Property is located.

## 7. CONDITION OF PROPERTY: Buyer accepts property in it's present "as is" condition. Seller understands that there will be no repairs requested to be done by Buyer except as otherwise provided for in this agreement.

## 8. ASSIGNMENT OF AGREEMENT: Buyer may market, negotiate, and resell the property to a third part(y)ies. Buyer may assign this agreement to another buyer without restriction. If this agreement is assigned, all rights, interests, suits, claims and titles in this agreement will be assigned to the new buyer and the assignor will be released from all liability.

## 9. TENANT OCCUPIED PROPERTIES: All rent paid in advance by Tenant shall be paid by Seller to Buyer at closing, including a prorated amount for the month of closing. All unpaid delinquent receivables related to current or prior tenants associated with Subject Property shall be disclosed by Seller and transferred to Buyer at closing. Buyer shall have the exclusive right to collect rents. Seller shall furnish Buyer with Application, Lease, Check-in Sheet, and detailed ledger dating back to the beginning of the most recent term for all tenants.

**10. DEFAULT:** If Buyer rescinds from the agreement after the above review is completed, Buyer shall pay Seller a $1,000.00 agreement release fee as full settlement of any claim whereupon both parties will be relieved of all obligations under this agreement. If Seller defaults, the Buyer may seek specific performance and damages resulting from Seller's breach.

**11. SCHMUCK INSURANCE:** That Parties acknowledge that due to the unique circumstances surrounding this sale, there is less than perfect information as the "value" of these homes. Buyer agrees that after all of his costs and a 15% (annualized) rate of return:
a) Buyer will share with Seller 50% of profits from any sale that occurs within 6 months of Closing
b) Buyer will share with Seller 25% of profits for any sale within the 365 days of closing.
c) Buyer will share with Seller 10% of profits for any sale within 2 years of closing

## 12. CONFIDENTIALITY

The Parties acknowledge that the premature disclosure of the existence of this Agreement and/or the subject matter of this Agreement may be adverse to their best interests and have therefore agreed to maintain in confidence the existence of this Agreement and its subject matter (collectively, the "Information") for a certain period of time. Accordingly, the Parties agree as follows:

The Parties agree not to and agree to direct each of their Representatives (as defined in this Section 12 (a)) not to, directly or indirectly, disclose, reveal, divulge, publish, or otherwise make known the Information to any person or entity for any reason or purpose whatsoever other than their Representatives and except as provided in Section 12(b) below. For the purposes of this Agreement, the "Representative" of the Parties means their respective directors, officers, counsel, employees, lender, or financial institution who have a need to know the Information. Explicitly excluded from this Section 12(a) are any disclosures necessary to effectuate the Closing (as defined in the Settlement Agreement) or any disclosures to the Parties' employees, agents, representatives, attorneys, accountants, members, partners, investors or any governmental body or agency.

Notwithstanding the provisions of Section 12(a), if a Party or any of its Representatives is required to disclose any Information pursuant to any applicable law, rule or regulation, that Party or that Representative, as the case may be, agrees to promptly notify the other Party in writing of any such requirement so that the other Party may seek an appropriate protective order or other appropriate remedy or waive compliance with the provisions of this Agreement. The Parties will reasonably cooperate with each other to obtain such a protective order or other remedy. If such order or other remedy is not obtained, or the other Party waives compliance with the provisions of this Agreement, the Party or its Representatives, as the case may be, will disclose only that portion of the Information which they are advised by counsel that they are legally required to so disclose and will obtain reliable assurance that confidential treatment will be accorded the information so disclosed.

**13. ADDITIONAL TERMS:** If any additional terms contradict any standard terms of this agreement, the additional terms shall replace the standard terms.

   A)   *All funds beyond the loan payoffs shall be held in escrow, as per terms of the escrow agreement.*

   B)   *Legal and physical possession of the Property, exclusive of, and without, any claims of possession or of occupancy by any other person or entity ("Possession") should transfer over to Buyer at closing. Recognizing the difficulty this presents for the Seller, Buyer will give Seller until June 1 2022 to transfer Possession of the property. If Possession of the property(ies) is not transferred to Buyer by June1, 2022, Seller will pay Buyer $1800.00 dollars per day (apportioned per property) "Transfer Fees" for every day until Possession is transferred to Buyer.*

**ADDENDUM / AMENDMENT A**

This addendum is part of a Purchase Agreement dated May 13, 2022 between Rebecca Moses as Seller(s) and The Tzedek Group LLC, on behalf of a(n) entity(ies) to be named later as Buyer(s) for property commonly known as <u>Listed on Amendment A</u> (the "Purchase Agreement").

For and in consideration of the mutual covenants, conditions, agreements and representations herein set forth, the parties agree to amend the Purchase Agreement as follows:

1. **10095 Lasalle Blvd, Huntington Woods, MI 48070**
   Property ID:2520228007
   Legal Description: Lot 281, also ½ of the vacated alley, Bronx Subdivision, as recorded in Liber 13 of Plats, page(s) 22 & 22 1/2, Oakland County Records.

2. **3994 Arcadia, Waterford, MI**
   Property ID:1335156019
   Legal Description: Lot 557, Elizabeth Lake Estates No.2, as recorded in Liber 27 of Plats, page 6, Oakland County Records.

3. **7382 Yale, Lexington, MI**
   Property ID:26130300486000
   Legal Description: GREAT LAKES BEACH #3 LOTS 4860 to 4865 INCL. 7382 YALE

_____   5-31-2022
Seller                    Date

_____   5-31-22
Buyer                     Date

14. **AGREEMENT OF THE PARTIES:** This agreement contains the entire agreement of the parties and cannot be changed except by their written agreement.

Seller _____     Date _____ 5-31-2022 _____

Buyer _____     Date _____ 5-31-22 _____

**PURCHASE AGREEMENT**

AGREEMENT dated May 13, 2022

by and between the following parties:

Rebecca Moses ("SELLER"), and The Tzedek Group LLC, ("BUYER)")

The parties agree that the Seller will sell and Buyer will buy the following property according to the terms

of this agreement.

## 1.SUBJECT PROPERTY:

**10095 Lasalle Blvd, Huntington Woods, MI 48070**
**Property ID:2520228007**
**Legal Description: Lot 281, also ½ of the vacated alley, Bronx Subdivision, as recorded in Liber 13 of Plats, page(s) 22 & 22 1/2, Oakland County Records.**

This sale includes the above-described real property and shall also include all personal property and fixtures, including attached lighting fixtures, ceiling fans, drapery, mailbox, sheds, fences, appliances, bidets and installed landscaping.

## 2.TOTAL PURCHASE PRICE: $613,000.00

## 3.PAYMENT METHOD FOR PURCHASE: Cash Sale

**4. TITLE & CLOSING:** Closing shall take place, on May 27, 2022. Seller shall convey title by General Warranty Deed, subject to taxes, existing zoning, covenants, restrictions and easements of record. Seller shall furnish buyer with a title policy without standard exceptions. If title evidence or survey reveal any defects which render the title unmarketable, Buyer or closing agent will have seven (7) days from receipt of title commitment and survey to notify Seller of such title defects. Seller agrees to use reasonable diligence to cure such defects at Seller's expense within 30 days. If Seller is unable to deliver marketable title or if Buyer is dissatisfied with the title commitment issued by the Title company for any reason, Buyer will have the right to terminate this agreement without Default penalty and shall be entitled to the immediate return of all Money paid.

**5.CLOSING COSTS:** Buyer and Seller shall pay the following costs at closing:

· Transfer taxes to be paid by SELLER
·Title Insurance Policy to be paid by SELLER
· Recording Fee to be paid by BUYER
· Closing Fee to be paid by BUYER

**6. PRORATIONS:** All property taxes, association fees, and assessments due and payable on or before date of closing, or which are confirmed, but not yet due or payable as of the date of closing, shall be paid by Seller at closing. Current taxes shall be prorated and adjusted as of date of closing in accordance with due date of municipality or taxing unit(s) in which Property is located.

**7.CONDITION OF PROPERTY:** Buyer accepts property in it's present "as is" condition. Seller understands that there will be no repairs requested to be done by Buyer except as otherwise provided for in this agreement.

**8.TENANT OCCUPIED PROPERTIES:** All rent paid in advance by Tenant shall be paid by Seller to Buyer at closing, including a prorated amount for the month of closing. All unpaid delinquent receivables related to current or prior tenants associated with Subject Property shall be disclosed by Seller and transferred to Buyer at closing. Buyer shall have the exclusive right to collect rents. Seller shall furnish Buyer with Application, Lease, Check-in Sheet, and detailed ledger dating back to the beginning of the most recent term for all tenants.

**9. DEFAULT:** If Buyer rescinds from the agreement after the above review is completed, Buyer shall pay Seller a $1,000.00 agreement release fee as full settlement of any claim whereupon both parties will be relieved of all obligations under this agreement. If Seller defaults, the Buyer may seek specific performance and damages resulting from Seller's breach.

**10. ADDITIONAL TERMS:** If any additional terms contradict any standard terms of this agreement, the additional terms shall replace the standard terms.

A)      *Legal and physical possession of the Property, exclusive of, and without, any claims of possession or of occupancy by any other person or entity ("Possession") should transfer over to Buyer at closing. Recognizing the difficulty this presents for the Seller, Buyer will give Seller until June 1 2022 to transfer Possession of the property. If Possession of the property is not transferred to Buyer by June1, 2022, Seller will pay Buyer $1000.00 dollars per day "Transfer Fees" for every day until Possession is transferred to Buyer.*

B)      *If Seller does not transfer Possession by June 8, the Transfer Fees shall be retroactively apply for the dates between May 27- June 1*

C)      *If by June 15, Seller has not transferred Possession to the Buyer, the Seller must transfer over her full legal interest in Bet Lucy LLC (of which seller is the only Member,) to the Buyer.*

D)      *Assignment of Seller's interests in Bet Lucy (to Buyer) shall be held in escrow with the title company until June 15th and shall be released from escrow (to Buyer) if Seller has not transferred Possession by then. Alternatively the assignment shall be voided providing that Possession has been transferred to Buyer on or before June 14th.*

**11. AGREEMENT OF THE PARTIES:** This agreement contains the entire agreement of the parties and cannot be changed except by their written agreement.

Seller _____     Date _____ 5-13-2022 _____

Buyer _____     Date _____ 5-13-2022 _____

**Seller Contact**

**Buyer Contact**

## PURCHASE AGREEMENT

AGREEMENT dated May 13, 2022 ("Contract Date") by and between the following parties:

Rebecca Moses ("SELLER"), and Lexiford Properties LLC, "BUYER)")

The parties agree that the Seller will sell and Buyer will buy the following property according to the terms of this agreement.

### 1.SUBJECT PROPERTY:
**7382 Yale, Lexington, MI**
**Property ID:26130300486000**
**Legal Description: GREAT LAKES BEACH #3 LOTS 4860 to 4865 INCL. 7382 YALE**

This sale includes the above-described real property and shall also include all personal property and fixtures, including attached lighting fixtures, ceiling fans, drapery, mailbox, sheds, fences, appliances, bidets and installed landscaping.

### 2.TOTAL PURCHASE PRICE: $84,000.00

### 3.PAYMENT METHOD FOR PURCHASE: Cash Sale

**4. TITLE & CLOSING:** Closing shall take place, on May 27, 2022. Seller shall convey title by General Warranty Deed, subject to taxes, existing zoning, covenants, restrictions and easements of record. Seller shall furnish buyer with a title policy without standard exceptions. If title evidence or survey reveal any defects which render the title unmarketable, Buyer or closing agent will have seven (7) days from receipt of title commitment and survey to notify Seller of such title defects. Seller agrees to use reasonable diligence to cure such defects at Seller's expense within 30 days. If Seller is unable to deliver marketable title or if Buyer is dissatisfied with the title commitment issued by the Title company for any reason, Buyer will have the right to terminate this agreement without Default penalty and shall be entitled to the immediate return of all Money paid.

**5.CLOSING COSTS:** Buyer and Seller shall pay the following costs at closing:
· Transfer taxes to be paid by SELLER
·Title Insurance Policy to be paid by SELLER
· Recording Fee to be paid by BUYER
· Closing Fee to be paid by BUYER

**6. PRORATIONS:** All property taxes, association fees, and assessments due and payable on or before date of closing, or which are confirmed, but not yet due or payable as of the date of closing, shall be paid by Seller at closing. Current taxes shall be prorated and adjusted as of date of closing in accordance with due date of municipality or taxing unit(s) in which Property is located.

**7.CONDITION OF PROPERTY:** Buyer accepts property in it's present "as is" condition. Seller understands that there will be no repairs requested to be done by Buyer except as otherwise provided for in this agreement.

**8.TENANT OCCUPIED PROPERTIES:** All rent paid in advance by Tenant shall be paid by Seller to Buyer at closing, including a prorated amount for the month of closing. All unpaid delinquent receivables related to current or prior tenants associated with Subject Property shall be disclosed by Seller and transferred to Buyer at closing. Buyer shall have the exclusive right to collect rents. Seller shall furnish Buyer with Application, Lease, Check-in Sheet, and detailed ledger dating back to the beginning of the most recent term for all tenants.

**9. DEFAULT:** If Buyer rescinds from the agreement after the above review is completed, Buyer shall pay Seller a $1,000.00 agreement release fee as full settlement of any claim whereupon both parties will be relieved of all obligations under this agreement. If Seller defaults, the Buyer may seek specific performance and damages resulting from Seller's breach.

**10. AGREEMENT OF THE PARTIES:** This agreement contains the entire agreement of the parties and cannot be changed except by their written agreement.

Seller _____  Date ___5-/)-2022___

Buyer _____  Date ___5-13-2022___

**Seller Contact**

**Buyer Contact**

## PURCHASE AGREEMENT

AGREEMENT dated May 13, 2022 ("Contract Date") by and between the following parties:

Rebecca Moses ("SELLER"), and Waterton Properties LLC, "BUYER)")

The parties agree that the Seller will sell and Buyer will buy the following property according to the terms of this agreement.

**1.SUBJECT PROPERTY:**
**3994 Arcadia, Waterford, MI**
**Property ID:1335156019**
**Legal Description: Lot 557, Elizabeth Lake Estates No.2, as recorded in Liber 27 of Plats, page 6, Oakland County Records.**

This sale includes the above-described real property and shall also include all personal property and fixtures, including attached lighting fixtures, ceiling fans, drapery, mailbox, sheds, fences, appliances, bidets and installed landscaping.

**2.TOTAL PURCHASE PRICE**: $53,000.00

**3.PAYMENT METHOD FOR PURCHASE:** Cash Sale

**4. TITLE & CLOSING:** Closing shall take place, on May 27, 2022. Seller shall convey title by General Warranty Deed, subject to taxes, existing zoning, covenants, restrictions and easements of record. Seller shall furnish buyer with a title policy without standard exceptions. If title evidence or survey reveal any defects which render the title unmarketable, Buyer or closing agent will have seven (7) days from receipt of title commitment and survey to notify Seller of such title defects. Seller agrees to use reasonable diligence to cure such defects at Seller's expense within 30 days. If Seller is unable to deliver marketable title or if Buyer is dissatisfied with the title commitment issued by the Title company for any reason, Buyer will have the right to terminate this agreement without Default penalty and shall be entitled to the immediate return of all Money paid.

**5.CLOSING COSTS:** Buyer and Seller shall pay the following costs at closing:
· Transfer taxes to be paid by SELLER
·Title Insurance Policy to be paid by SELLER
· Recording Fee to be paid by BUYER
· Closing Fee to be paid by BUYER

**6. PRORATIONS:** All property taxes, association fees, and assessments due and payable on or before date of closing, or which are confirmed, but not yet due or payable as of the date of closing, shall be paid by Seller at closing. Current taxes shall be prorated and adjusted as of date of closing in accordance with due date of municipality or taxing unit(s) in which Property is located.

**7.CONDITION OF PROPERTY:** Buyer accepts property in it's present "as is" condition. Seller understands that there will be no repairs requested to be done by Buyer except as otherwise provided for in this agreement.

**8.TENANT OCCUPIED PROPERTIES:** All rent paid in advance by Tenant shall be paid by Seller to Buyer at closing, including a prorated amount for the month of closing. All unpaid delinquent receivables related to current or prior tenants associated with Subject Property shall be disclosed by Seller and transferred to Buyer at closing. Buyer shall have the exclusive right to collect rents. Seller shall furnish Buyer with Application, Lease, Check-in Sheet, and detailed ledger dating back to the beginning of the most recent term for all tenants.

**9. DEFAULT:** If Buyer rescinds from the agreement after the above review is completed, Buyer shall pay Seller a $1,000.00 agreement release fee as full settlement of any claim whereupon both parties will be relieved of all obligations under this agreement. If Seller defaults, the Buyer may seek specific performance and damages resulting from Seller's breach.

**10. AGREEMENT OF THE PARTIES:** This agreement contains the entire agreement of the parties and cannot be changed except by their written agreement.

Seller _____   Date ____ 5-13-2022 ____

Buyer _____   Date ____ 5-13-2022 ____

**Seller Contact**


**Buyer Contact**

# EXHIBIT C

## CORRECTIVE WARRANTY DEED

### Recorded to correct erroneous named Grantee
### on Warranty Deed dated May 31, 2022 and recorded at Liber 57826 Page 722.

## WARRANTY DEED

MI-22835944-NLP

*KNOW ALL PERSONS BY THESE PRESENTS:* That: Rebecca M. Moses, ("Grantor")

the address of which is: 29250 Creekbend, Farmington Hills, MI 48331

convey(s) and warrant(s) to: Tzedek Company, LLC, a Michigan limited liability company ("Grantee")

the address of which is: 4677 Achilla St., Commerce, MI 48382

the following described premises situated in the City of Huntington Woods, County of Oakland, State of Michigan, to wit:

Lot 281, also 1/2 of the vacated alley, Bronx Subdivision, as recorded in Liber 13 of Plats, Page(s) 22 and 22 1/2, Oakland County Records.

Commonly known as: 10095 Lasalle Blvd., Huntington Woods, MI 48070
Parcel ID No.: 32-25-20-228-007

together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, for the sum of Six Hundred Thirteen Thousand and 00/100 Dollars (***$613,000.00***).

Subject to zoning, building and use restrictions, easements and right of way of record.

Dated this July 1, 2022

Signed by:

Rebecca M. Moses

State of Michigan        )
                         )SS.
County of Oakland        )

The foregoing instrument was acknowledged before me on this day of July 1, 2022 by Rebecca M. Moses.

CASSAUNDRA STAHL
NOTARY PUBLIC – STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires June 14, 2027
Acting in the County of Oakland

Notary Public: Cassaundra Stahl State: MI
Notary County: Oakland
Commission Expires: 06-14-27
Acting in: Oakland

When Recorded return to:          Send Subsequent Tax Bills To:        Drafted By:
28550 Tavistock Trail             Grantee                              David B. Viar, ESQ.
Southfield, MI 48034
                                                                       950 W. University
                                                                       Rochester, MI 48307

**WARRANTY DEED**                                                                 MI-22835940-NLP

*KNOW ALL PERSONS BY THESE PRESENTS:* That: Rebecca  M. Moses, ("Grantor")

the address of which is: 29250 Creekbend, Farmington Hills, MI 48331

convey(s) and warrant(s) to: Lexiford Properties, LLC, ("Grantee")

the address of which is: 23307 Playview St, Saint Clair Shores, MI  48082

the following described premises situated in the Township of Worth, County of Sanilac, State of Michigan, to wit:

Lots 4860, 4861, 4862, 4863, 4864 and 4865, Great Lakes Beach No. 3, according to the recorded plat thereof as recorded in Liber 3, Page 14 of Plats, Sanilac County Records.

Commonly known as: 7382 Yale Rd, Lexington, MI 48450
Parcel ID No.: 261-303-004-860-00

together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, for the sum of Eighty Four Thousand and 00/100 Dollars (***$84,000.00***).

Subject to zoning, building and use restrictions, easements and right of way of record.

Dated this May 31, 2022

Signed by:

_____

Rebecca  M. Moses

State of Michigan                          )
                                           )SS.
County of OAKLAND                          )

The foregoing instrument was acknowledged before me on this 31st day of May, 2022 by Rebecca  M. Moses

MATTHEW A. CECI
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMISSION EXPIRES JUL. 29, 2024
ACTING IN COUNTY OF OAKLAND
OW

Notary Public: _____
Notary County: _____,State: _____
Commission Expires: _____
Acting In: _____

When Recorded return to:
28550 TAVISTOCK TRI
Southfield, MI 48034
23307 Playview St
Saint Clair Shores, MI 48082

Send Subsequent Tax Bills To:
Grantee

Drafted By:
Rebecca  M. Moses
29250 Creekbend
Farmington Hills, MI 48331
Assisted by: ATA National Title Group,
LLC

**WARRANTY DEED**                                                     MI-22835946-NLP

*KNOW ALL PERSONS BY THESE PRESENTS:* That: Rebecca M. Moses, ("Grantor")

the address of which is: 29250 Creekbend, Farmington Hills, MI 48331

convey(s) and warrant(s) to: Waterton Properties, LLC, ("Grantee")

the address of which is: 223 W. Ohio, Marquette, MI  49855

the following described premises situated in the Township of Waterford, County of Oakland, State of Michigan, to wit:

Lot 557, Elizabeth Lake Estates No. 2, as recorded in Liber 27 of Plats, Page 6, Oakland County Records.

Commonly known as: 3994 Arcadia Park Dr, Waterford, MI 48328
Parcel ID No.:  13-35-156-019

together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, for the sum of Fifty Three Thousand and 00/100 Dollars (***$53,000.00***).

Subject to zoning, building and use restrictions, easements and right of way of record.

Dated this May 31, 2022

Signed by:

_____

Rebecca M. Moses

State of Michigan                    )
                                     )SS.
County of OAKLAND                    )

The foregoing instrument was acknowledged before me on this 31st day of May, 2022 by Rebecca M. Moses

MATTHEW A. CECI
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMISSION EXPIRES JUL. 29, 2024
ACTING IN COUNTY OF   OAKLAND

Notary Public: _____
Notary County: _____,State: _____
Commission Expires: _____
Acting In: _____

When Recorded return to:   ON
28550 TAVISTOCK TRL
SOUTHFIELD MI  48034
223 W. Ohio
Marquette MI  49855

Send Subsequent Tax Bills To:
Grantee

Drafted By:
Rebecca M. Moses
29250 Creekbend
Farmington Hills, MI 48331
Assisted by: ATA National Title Group,
LLC

# EXHIBIT D

390324      Liber   37010   Page
6/3/2022        9:26:21 AM      Receipt #000305452
$21.00      Miscellaneous
$4.00       Remonumentation
$5.00       Automation
$0.00       Transfer Tax
UCC #
PAID RECORDED - Oakland County, MI
Lisa Brown, Clerk/Register of Deeds

RECEIVED
OAKLAND COUNTY
REGISTER OF DEEDS

2022 JUN -3 AM 9: 02

## NOTICE OF LIS PENDENS

A lawsuit is pending in the Oakland County Circuit Court, State of Michigan, between REBECCA M MOSES and DAVID Z MOSES, Case No 2020-503106-DM, involving certain real property located in the Township of Waterford, Oakland County, State of Michigan and more particularly described as follows

Lot 281, also ½ of the vacated alley, Bronx Subdivision, as recorded in Liber 13 of Plats, Page(s) 22 and 22½, Oakland County Records
Commonly known as 10095 LaSalle Blvd , Huntington Woods, MI 48070,
Tax Id No 32-25-20-228-007

And in that case, a Consent Order for Financial Status Quo and Mutual Injunction was entered on 10/4/2020 which states, in pertinent part, that

During the pendency of this cause, or until further order of the court, Plaintiff and Defendant their agents, servants, employees and attorneys, and those persons in active concert or participation with them, who receive actual notice of this mutual temporary restraining order, by personal service or otherwise, are restrained and enjoined from   concealing, secreting, selling, assigning, transferring, (including transfers to either party or to any other person as trustee, guardian or nominee), conveying, mortgaging, or otherwise disposing of or encumbering any of either party's assets (real or personal, tangible or intangible), or any interest therein (legal or equitable)    without the prior order of this court

1P

_____        6/2/2022
David Z  Moses                          Date

The foregoing instrument was acknowledged before me this 2nd of June, 2022 by an individual known by me to be David Z  Moses

_____
Notary Public  State of Michigan
Acting in the County of Oakland
My Commission Expires  Nov 8, 2025

JAMIE LEE YORKE
Notary Public - State of Michigan
County of Macomb
My Commission Expires Nov 8  2025
Acting in the County of Oakland

Drafted by and when recorded return to
David Z  Moses
10095 Lasalle Blvd
Huntington Woods, MI 48070

OK LB

Return to: Counter Customer



LIBER **1528**   PAGE **112**

**2022 JUN -3  AM II: 17**



RECEIVED FOR RECORD
MICHELE VANNORMAN, REGISTER OF DEEDS
SANILAC COUNTY, MICHIGAN
06/03/2022  11:33:05 AM

### NOTICE CLAIM OF INTEREST
(Under 1945 P.A. 200 M.C.L.A. 565.105)

STATE OF MICHIGAN      }
                                }SS

COUNTY OF SANILAC      )

**Know all men by these presents,**

1.     David Z. Moses, as spouse of Rebecca M. Moses, and further as defendant in divorce case no. 2020-503106-DM (Oakland County, MI), hereby claim an interest in and to real property (as follows, the "Property") located in the Township of Worth, County of Sanilac, State of Michigan to wit:

    Lots 4860, 4861, 4862, 4863, 4864 and 4865, Great Lakes Beach No. 3, according to the recorded plat thereof as recorded in Liber 3, Page 14 of Plats, Sanilac County Records.

    Commonly known as 7382 Yale, Lexington, MI  48450
    Tax Id. No 261-303-004-860-00

2.     That this affidavit is being made for the purpose of giving notice to the world of the existence of a Consent Order for Financial Status Quo and Mutual Injunction ("Consent Order") entered 10/14/2020 by Hon. Kameshia D. Gant, in the aforementioned divorce case no. 2020-503106-DM, State of Michigan, Circuit Court for the County of Oakland, Family Division (the "Court").

3.     That the aforementioned Consent Order states that "During the pendency of this cause, or until further order of the court, Plaintiff and Defendant their agents, servants, employees and attorneys, and those persons in active concert or participation with them, who receive actual notice of this mutual temporary restraining order, by personal service or otherwise, are restrained and enjoined from... concealing, secreting, selling, assigning, transferring, (including transfers to either party or to any other person as trustee, guardian or nominee), conveying, mortgaging, or otherwise disposing of or encumbering any of either party's assets (**real** or personal, tangible or intangible), or any interest therein (legal or equitable)... without the prior order of this court;"

4.     That as of the date of this Notice of Claim of Interest, **neither** the Court, nor anyone designated the by the Court, has granted any party the authority to convey or mortgage the Property, nor have the parties David and Rebecca Moses mutually agreed to convey the property.

Dated: 6/1/2022

By: David Z. Moses

The foregoing instrument was acknowledged before me this 1st day of June, 2022 by an individual known by me to be David Z. Moses.

Notary Public: State of Michigan
My Commission Expires Nov, 8, 2025
Acting in the County of Oakland

> JAMIE LEE YORKE
> Notary Public - State of Michigan
> County of Macomb
> My Commission Expires Nov 8, 2025
> Acting in the County of Oakland

Drafted by and when recorded return to:
David Z. Moses
10095 LaSalle Blvd
Huntington Woods, MI  48070david@335.rent

390524    Liber  57816   Page  274 thru 274
390525    Liber  57816   Page  275 thru 275
6/3/2022   9:26:21 AM    Receipt #000305452
$21.00    Misc Recording
$4.00    Remonumentation
$5.00    Automation
$0.00    Transfer Tax
UCC #
PAID RECORDED - Oakland County, MI
Lisa Brown, Clerk/Register of Deeds

RECEIVED
OAKLAND COUNTY
REGISTER OF DEEDS

2022 JUN -3  AM 9: 03

### NOTICE OF LIS PENDENS

A lawsuit is pending in the Oakland County Circuit Court, State of Michigan, between REBECCA M MOSES and DAVID Z MOSES, Case No 2020-503106-DM, involving certain real property located in the Township of Waterford, Oakland County, State of Michigan and more particularly described as follows

Lot 557, Elizabeth Lake Estates No 2, as recorded in Liber 27 of Plats, page 6, Oakland County Records
Commonly known as 3994 Arcadia Park Dr
Tax Id No  13-35-156-019

And in that case, a Consent Order for Financial Status Quo and Mutual Injunction was entered on 10/4/2020 which states, in pertinent part, that

> "During the pendency of this cause, or until further order of the court, Plaintiff and Defendant their agents, servants, employees and attorneys, and those persons in active concert or participation with them, who receive actual notice of this mutual temporary restraining order, by personal service or otherwise, are restrained and enjoined from    concealing, secreting, selling, assigning, transferring, (including transfers to either party or to any other person as trustee, guardian or nominee), conveying, mortgaging, or otherwise disposing of or encumbering any of either party's assets (real or personal, tangible or intangible), or any interest therein (legal or equitable)    without the prior order of this court "

1P

_____          6/2/2022
David Z  Moses                     Date

The foregoing instrument was acknowledged before me this 2nd of June, 2022 by an individual known by me to be David Z  Moses

_____
Notary Public  State of Michigan
Acting in the County of Oakland
My Commission Expires  Nov 8, 2025

```
JAMIE LEE YORKE
Notary Public - State of Michigan
County of Macomb
My Commission Expires Nov 8, 2025,
Acting in the County of Oakland
```

Drafted by and when recorded return to
David Z  Moses
10095 Lasalle Blvd
Huntington Woods, MI  48070

OK LB

# EXHIBIT E

**STATE OF MICHIGAN**
**IN THE OAKLAND COUNTY CIRCUIT COURT**
**FAMILY DIVISION**

REBECCA M. MOSES,

        Plaintiff,

vs.

DAVID Z. MOSES,

        Defendant.

Case No. 2020-503106-DM
Hon. Kameshia D. Gant
Arbitrator: Kurt Schnelz

> **VERIFIED MOTION AND
> BRIEF TO APPOINT
> RECEIVER AND FOR OTHER
> RELIEF**

/

Jordan S. Dizik (P76470)
The Dizik Law Firm
Co-Counsel for Plaintiff
370 E. Maple Road-Ste. 300
Birmingham, MI 48009
(248) 712-1056
jordan@diziklaw.com

Josh Faber (P76986)
Berlin Family Law Group PLLC
Co-Counsel for Plaintiff
901 Wilshire Drive-Ste. 580
Troy, MI 48084
(248) 655-7980
jfaber@berlinfamilylawgroup.com

Tova Shaban (P38392)
David T. Lin (P70764)
Seyburn Kahn, P.C.
Counsel for Special Master
Henry M. Nirenberg
2000 Town Center, Ste. 1500
Southfield, MI 48075
(248) 353-7620
tshaban@seyburn.com
dlin@seyburn.com

David B. Trivax (P38798)
Serlin, Trivax & Assoc., P.C.
Attorneys for Defendant
37911 W. 12 Mile Road
Farmington Hills, MI 48331
(248) 633-2666
dtrivax@serlintrivax.com

Michael A. Robbins (P33884)
Law Office of Michael A. Robbins
Co-Counsel for Defendant
3910 Telegraph Road-Ste. 200
Bloomfield Hills, MI 48302
(248) 646-7980
mrobbins@michaelarobbins.com

Henry M. Nirenberg (P36847)
Seyburn Kahn, P.C.
Special Master on behalf of Marital Estate
2000 Town Center, Ste. 1500
Southfield, MI 48075
(248) 353-7620
hnirenberg@seyburn.com

> **Before Arbitrator Kurt Schnelz**

/

{01752986.DOC;2 }

## VERIFIED MOTION AND BRIEF TO
## APPOINT RECEIVER AND FOR OTHER RELIEF

### I.    *Introduction:*

Defendant, David Moses, respectfully requests that the Arbitrator grant appropriate arbitration awards for the Circuit Court to enter and confirm the following relief:[1]

**(A)** To appoint Henry M. Nirenberg as receiver of (1) the real properties situated at 10095 LaSalle Blvd, Huntington Woods, Michigan 48070, 7382 Yale, Lexington, Michigan 48450, and 3994 Arcadia Park Drive, Waterford, Michigan 48328 (collectively, the "Properties"), together with (2) all proceeds relating to such Properties, and (3) all legal and equitable claims and causes of action, and rights to interim equitable and injunctive relief, including stays of eviction proceedings, arising from the sale or disposition of such Properties in violation of the Consent Order for Financial Status Quo and Mutual Injunction entered on October 14, 2020 (the "Injunction Order"), including without limitation, all rights and claims to enforce the Injunction Order and the Supplemental Arbitration Awards; and

**(B)** To specify the powers, functions, and terms of the receivership as required by MCR 2.622 under the Order proposed herein.

As explained below and in the Affidavit of David Moses, Plaintiff Rebecca Moses has caused the sale and disposition of the Properties in willful violation of the Injunction Order. Pursuant to MCR 2.622, a receiver must be appointed to preserve assets, proceeds, and records and to seek the appropriate legal, equitable, and injunctive relief to rectify the violation and recover the Properties and/or the proceeds of their unlawful sale.  These functions cannot be performed only through the powers given to Mr. Nirenberg as a special master, as they will undoubtedly entail the filing of the appropriate suit against various parties, including the buyers

---

[1] Any awards granting the relief requested in this Motion will be conditioned upon entry of Orders by the Circuit Court that approve/confirm such awards.

{01752986.DOC;2 }

of the Properties, and requests for injunctive relief to prevent the further sale and dissipation of the Properties and any proceeds, and any unlawful efforts to evict occupants at the Properties. The appointment of Mr. Nirenberg as receiver and arm of the Court, is necessary to provide such additional powers, and will curb further unlawful practices that have damaged the Marital Estate and the Properties themselves. For such good cause, Henry M. Nirenberg should be appointed as receiver.

## II. *Pertinent Facts:*[2]

The facts pertinent to this Motion are summarized below as: (A) The Injunction Order; (B) The Arbitration and Special Master; (C) Sales of the Properties and Eviction Efforts by Buyers / Admission that Buyer Knew of Orders of the Court; and (D) Subsequent Filings and Investigation.

### A.   The Injunction Order

The Complaint in this action was filed on October 12, 2020. On October 14, 2020, the Court entered the Consent Order for Financial Status Quo and Mutual Injunction. **(Exhibit A)**. The Injunction Order enjoined the sale of the Properties without the prior approval of the Court, under the following provisions:

> "2.    Assets. During the pendency of this cause, or until further order of the court, Plaintiff and Defendant their agents, servants, employees and attorneys, and those persons in active concert or participation with them, who receive actual notice of this mutual temporary restraining order, by personal service or otherwise, are restrained and enjoined from:
> * * * *
> c.    Regarding personal assets: concealing, secreting, selling, assigning, transferring (including transfers to either party or to any other person as trustee, guardian or nominee), conveying, mortgaging or otherwise disposing of or encumbering any of either party's assets (real or personal, tangible or intangible), or any interest therein (legal or equitable), including, but not limited to: . . . cash,

---

[2] The facts in the Motion and Brief are verified and supported by the Affidavit of David Moses. (Exhibit 1).
{01752986.DOC;2 }

savings accounts, checking accounts . . . or any other assets or business interests . . . without the prior order of this court . . .

d.      Regarding business assets: concealing, secreting, selling, assigning or transferring to any other person as trustee, guardian, or nominee, conveying, mortgaging, or otherwise disposing of, or encumbering any of the parties' business assets (real or personal, tangible or intangible), including but not limited to: . . . cash, savings accounts, checking accounts . . . business fixtures, business equipment, business vehicles or any other business interests . . . without the prior order of this court.

* * * *

3.      Violation of this Order may be punished by contempt of court, imposition of costs, fines, sanctions, an award of attorney fees and any and all other remedies allowed by operation of law."

(Exhibit A, at pp. 2-4).  Carol Breitmeyer (P35075) executed consent to the Injunction Order as attorney for Rebecca Moses.

## B.      The Arbitration and Special Master

On June 9, 2021, the Court entered the Stipulation and Order Referring Domestic Relations Issues to Binding Arbitration (the "Arbitration Order").  (Exhibit B).  Under the Arbitration Order, all of the issues of this case were referred to binding arbitration before the Arbitrator, under the Michigan Uniform Arbitration Act, MCL 691.1681, et seq. and MCR 3.602.  Under Paragraph 3 of the Order, all decisions of the Arbitrator "shall be binding on the parties."  Both Rebecca Moses and her attorney at the time, Daniel Findling (P52575), signed the approval to entry of the Arbitration Order.

Paragraph 6 of the Arbitration Order attaches the Matrimonial Arbitration Acknowledgment and Agreement under Michigan's Domestic Relations Arbitration statute, MCL 600.5070, et seq. (the "Arbitration Agreement").  (Exhibit C).  Under Paragraph 1a of the Arbitration Agreement, the Arbitrator is permitted to decide all issues including "division of assets" and "enforcement of the current status Quo Order."  Under Paragraph 15, the Arbitrator "shall have the authority to fashion any remedy available to the parties under the applicable

{01752986.DOC;2 }

3

Michigan law, at the sole discretion of the Arbitrator as set forth in the Michigan statutes and Michigan Court Rules." Paragraph 25 states that the "Arbitrator has the specific authority to make interim awards and decisions which shall be enforced by Court Order as well."

On November 9, 2021, the Court entered the Order Regarding Hearing Held Before Arbitrator Kurt E. Schnelz On October 29, 2021. On December 9, 2021, the Court entered a second more comprehensive Order on the same subject (the "Special Master Order"). (**Exhibit D**). Under the Special Master Order, Nirenberg was appointed as a special master to liquidate, by private sales, all the real estate of Bet-Lucy Holdings, LLC. The Special Master Order also vested a number of relevant powers in Nirenberg:

- Nirenberg is authorized to exercise "all powers generally available under the laws of the State of Michigan" including the customary powers of a Court-Appointed Receiver under MCL 600.2926. (*Id*, at p. 3, ¶3).

- Nirenberg is authorized to "act on behalf of and in the name of the Defendant(s), as Mr. Nirenberg shall deem appropriate." (*Id*).

- Nirenberg is authorized to hire a real estate broker, and retain a title company "acceptable to Nirenberg." (*Id*, at p. 4, ¶7).

- The parties, Rebecca Moses and David Moses, were each given rights of first refusal to submit timely offers "equal to or greater than the proposed offer" for each property, and Nirenberg retains "sole authority to either accept or reject any such offer by the party." (*Id*, at p. 5, ¶8).

- Net proceeds of the sales would be deposited with the Arbitrator's IOLTA account to be held for the Marital Estate. (*Id*, ¶10).

Rebecca Moses' attorney at the time, Daniel Findling (P52575), and counsel for the Defendant, signed the approval to enter the Special Master Order. (*Id*, at p. 6).

**C.**     **Sales of the Properties and Eviction Efforts by Buyers / Admission that Buyer Knew of Orders of the Court**

The properties of Bet-Lucy Holdings, LLC were liquidated and proceeds generated pursuant to the Special Master Order. The investigation is ongoing, but it was subsequently

{01752986.DOC;2 }

discovered that in May/June, 2022, Rebecca Moses without seeking approval from the Court in light of the injunction, entered into agreements and participated in transactions to cause the transfers of the Properties and the proceeds realized from those transfers. One of these properties is the marital home in which David Moses and the couple's children currently reside ("Martial Home"). The agreements included penalties that disproportionately weighed in favor of the Buyers and against Rebecca Moses, that resulted in the dissipation of the Properties and escrowed proceeds of same, which has injured the Marital Estate. Rebecca Moses also took an interest in a share of profits arising from the Properties. A summary of such agreements and transfers are below:

<u>**Agreements At Issue**</u>:

Purchase Agreement dated May 31, 2022 (not produced by Rebecca Moses).

Amended Agreement to Purchase Real Estate dated May 31, 2022 (**Exhibit E**).
- Seller is identified as Rebecca Moses. Buyer is identified as "The Tzedek Group LLC".[3] This entity appears on the deed.
- Total Purchase Price for Properties: $1 million.
  (Notably: the difference between the total gross prices of the Properties on the closing statements (see below) and $1 million, is $250,000, which $250,000 was escrowed with Kenneth R. Beams, PLLC and subsequently released to Buyers with signed written authorization by Rebecca Moses in mid-June, 2022).
- There was a profit-sharing provision between Rebecca Moses and Buyers. Paragraph 11 "Schmuck Insurance" states that "That Parties acknowledge that due to the <u>unique circumstances</u> surrounding this sale, there is less than perfect information as the "value' of these homes. Buyer agrees that after all of his costs and a 15% (annualized) rate of return:
  a) Buyer will share with Seller 50% of profits from any sale that occurs within 6 months of Closing
  b) Buyer will share with Seller 25% of profits for any sale within the 365 days of closing.

---

[3] "The Tzedek Group LLC" <u>did not exist</u> on May 31, 2022 when the closings took place or before that, and nothing indicates that David Wolkinson had any position at such entity to execute documents for it. David Moses organized Tzedek Group LLC on June 14, 2022. (**Exhibit F**). There is a "Tzedek Company, LLC" associated with David Wolkinson, but this entity does not appear on the purchase agreement or the deed to the Marital Home. Tzedek Company, according to DLARA, was not formed until after the sale of the Marital Home.
{01752986.DOC;2 }

c) Buyer will share with Seller 10% of profits for any sale within 2 years of closing"
(Emphasis added).

Escrow Agreement dated May 13, 2022 (**Exhibit G**). This Escrow Agreement includes a number of harsh penalties that would be drawn from the $250,000 in escrow if there is a threat of litigation, strongly suggesting that the Buyers were aware of the Injunction Order.

- Kenneth R. Beams, PLLC was made escrow agent to hold the $250,000 in escrowed funds. (See above).
- If litigation or "bona fide threat to litigation is made to challenge the validity of this deal" then $100,000 is released to the Buyer.
- Seller must inform Buyer "of any attempts to block this transaction" or $10,000 per day shall be released from escrow to the Buyer.
- $50,000 shall be released from escrow to the Buyer per Lis Pendens filed.
- If possession is not transferred by June 1, 2022, up to $1,800 per day shall be released from escrow to the Buyer.
- The Parties also agreed to be silent. They agreed they shall not disclose information unless compelled by the Court. If compelled, a $100,000 "disclosure fee" shall be charged.
- Rebecca Moses agreed to indemnify the Buyer for all costs and reasonable attorney fees of the Buyer for "defending any litigation commenced by third parties that relate to this agreement . . . "

Pledge Agreement dated May 31, 2022 (**Exhibit H**). Without obtaining permission from the Court, Rebecca Moses also assigned and encumbered her business membership interests in Bet-Lucy.

- To secure Rebecca Moses' indemnification obligations to the Buyer under the Escrow Agreement, Rebecca Moses agreed to pledge her membership interests in "Bet Lucy, LLC".[4]
- No documents showing any actual assignment or collateral assignment of the membership interests, or any written consent by the members of Bet-Lucy Holdings, LLC to any such pledge/assignment.
- Kenneth R. Beams, PLLC is identified as the pledge holder to take possession of the assignments of membership interests.

**Transfers At Issue:**

**10095 LaSalle Blvd, Huntington Woods, Michigan 48070**

---

[4] There is no "Bet Lucy, LLC" in existence. The company registered with DLARA is "Bet-Lucy Holdings, LLC," which is a company in which both Rebecca Moses and David Moses hold interests. However, no LLC resolution or other documents have been produced to-date in which the members both consented to any pledge or assignment of Rebecca Moses' membership interests.

{01752986.DOC;2 }

<u>Closing</u>: May 31, 2022
<u>Title Company</u>: ATA National
<u>Seller</u>:  Rebecca Moses
<u>Buyer</u>: Tzedek Group LLC, 4677 Achilla Street, Commerce, MI 48382
<u>Signatory for Buyer</u>: David Wolkinson, as managing member of Tzedek Group LLC[5]
<u>Sale Price</u>: $613,000
<u>Level One Bank Payoff</u>: $253,528.15
<u>Roundpoint Mortgage Servicing Payoff</u>: $363,727.83
<u>Due from Seller</u>: $10,685.64

<u>7382 Yale, Lexington, Michigan 48450</u>

<u>Closing</u>: May 31, 2022
<u>Title Company</u>: ATA National
<u>Seller</u>:  Rebecca Moses
<u>Buyer</u>: Lexiford Properties, LLC, 23307 Playview St, Saint Clair Shores, MI 48082
<u>Signatory for Buyer</u>: David Wolkinson, as managing member of
  Lexiford Properties, LLC
<u>Sale Price</u>: $84,000
<u>First Mortgage Payoff</u>: $69,859.63
<u>Due to Seller</u>: $13,888.56

<u>3994 Arcadia Park Drive, Waterford, Michigan 48328</u>

<u>Closing</u>: May 31, 2022
<u>Title Company</u>: ATA National
<u>Seller</u>:  Rebecca Moses
<u>Buyer</u>: Waterton Properties, LLC, 223 W. Ohio, Marquette, MI 49855
<u>Signatory for Buyer</u>: David Wolkinson, as managing member of
  Waterton Properties, LLC
<u>Sale Price</u>: $53,000
<u>Mr. Cooper Payoff</u>: $53,780.26
<u>Due from Seller</u>: $3,377.08

Copies of the closing statements and deeds are attached as **Exhibit I**.

**Releases from Escrow:**

- $250,000 initially in escrow.

- <u>June 3, 2022</u>: $100,000 released to Buyer.  The Escrow Release asserts that this was because of a Lis Pendens filed by David Moses on the Waterford and Huntington

---

[5] As explained above, no Tzedek Group LLC existed in May 31, 2022 and nothing indicates that Mr. Wolkinson was an authorized signer for any Tzedek Group.  Mr. Wolkinson is associated with Tzedek Company, which is not the purchaser of the Marital Home.
{01752986.DOC;2 }

Woods Properties, which it said would trigger a penalty at rate of $50,000 per Lis Pendens filed.

- June 5, 2022: $100,000 released to Buyer. The Escrow Release asserts that this was because Henry Nirenberg has "made it clear that he is preparing litigation" and David Moses threatened to sue in early, June, 2022.

- June 14, 2022: $100,000 released to Buyer. Again, the Escrow Release asserts that this was because Henry Nirenberg has "made it clear that he is preparing litigation" and David Moses threatened to sue in early, June, 2022.

- June 15, 2022: $27,000 released to Buyer. The Escrow Release asserts that this was because the Seller has not turned over possession of the Properties, which triggers a penalty at a rate of $1,800 per day, and therefore, Buyer is entitled to $27,000 in escrowed funds from June 1-15, 2022.

Copies of the Escrow Releases are attached as **Exhibit J**.

**D.     Subsequent Filings and Investigation**

There is no dispute that the Properties are marital property of the Marital Estate subject to the Injunction Order.

Following the filing of the Complaint, a "Consent Order for Financial Status Quo and Mutual Injunction" was entered on October 14, 2020 barring the parties from selling, transferring, or encumbering any of their assets including business assets and including real property without Court approval.

On June 9, 2022, by order of the Court, all issues in the divorce, without limitation, were referred to binding arbitration including the division of marital assets. Further, the Arbitration Agreement specifically references the Status Quo Order included in the list of issues to be decided by the Arbitrator.

On or about May 31, 2022, in violation of the Orders of the Court and rulings of the Arbitrator, Plaintiff intentionally and willfully entered into three fraudulent transactions with one or more purchasers to acquire the aforementioned real estate owned by the marital estate:

{01752986.DOC;2 }

On June 8, 2022, a hearing was held on Defendant's Emergency Motion to Freeze Sale Proceeds, Produce Sale Documents, Appoint Attorney to Rescind Fraudulent Sale of Real Estate, to Hold Plaintiff in Contempt and Entry of Order.  Following the hearing, the Arbitrator on June 9, 2022 entered his Supplemental Arbitration Award in which he specifically found that the subject three transactions were fraudulent and required all proceeds received by the Plaintiff to be immediately turned over to the Arbitrator.  In anticipation of receiving a ruling following the Emergency hearing before Arbitrator Kurt Schnelz, the Defendant filed in this Court its Emergency Motion to Freeze Sale Proceeds, Produce Sale Documents, Appoint Attorney to Rescind Fraudulent Sale of Real Estate, to Hold Plaintiff in Contempt and Entry of Order on or about June 8, 2022.

On June 9, 2022, the Court, following receipt of the aforementioned Supplemental Arbitration Award, entered its own Order granting the Defendant Motion entering an Order incorporating the June 8, 2022 Supplemental Arbitration Award as part of the Court's Order.

### III.    *Applicable Legal Standards:*

The circuit courts of this State have broad equitable authority, including the inherent authority to appoint a receiver.  *Petripren v Taylor School District*, 104 Mich App 283, 294 (1981) ("trial court may appoint a receiver in the absence of a statute pursuant to its inherent equitable authority"); MCL 600.2926 ("circuit court judges in the exercise of their equitable powers, may appoint receivers in all cases pending where appointment is allowed by law").  The primary purpose of a receiver is to protect and preserve property and to dispose of it under order of the court.  *Band v Livonia Assoc*, 176 Mich App 95, 104 (1989); *Weathervane Window, Inc v White Lake Construction Co*, 192 Mich App 316, 322 (1991); *see also*, 65 Am Jur 2d, *Receivers*

§ 27 at 676 ("the necessity for conservation, preservation, protection, and administration of property, pending an action, justifies the appointment of a receiver").

IV.    _**Argument:**_

    This Court should appoint a receiver over the Properties for the following reasons:

    (A)    Violation of Injunction Order; and

    (B)    Evidence of Fraud and Concert of Action / Civil Conspiracy.

V.    _**Nominated Receiver Under MCR 2.622:**_

    Henry M. Nirenberg, Esq. has many years of receivership experience and is best suited to the duties of a receiver specific to this case.  He has served as court-reported receiver in both Detroit and other Michigan locations, including residential and commercial properties.  He has experience generally and, in this matter, liquidating marital assets.  Further, he is not precluded from acting as receiver as provided in MRC 2.622(B)(6).

    For such reasons more specifically set forth by David Moses, the Defendant nominates Mr. Nirenberg as receiver pursuant to MCR 2.622(B).  Mr. Nirenberg possesses sufficient competence, qualifications, and experience to administer the Receivership Estate pursuant to MCR 2.622.  His appointment will assure that Plaintiff no longer enters into any unauthorized transactions including fraudulent transactions regarding marital estate property and will give the marital estate the best opportunity to return to the marital estate the subject three fraudulently transferred properties.

**VI**

**Conclusion**

WHEREFORE, Defendant, David Moses, respectfully requests that his Petition for the appointment of Henry Nirenberg as Receiver be granted by entry of the Order attached hereto. A proposed Order is attached as **Exhibit K**.

Respectfully submitted,

SERLIN, TRIVAX & ASSOCIATES, PC

By: _____
   David B. Trivax (P38798)
   Attorney for Defendant
   37911 W 12 Mile Road
   Farmington Hills, MI  48331
   (248) 633-2666

Dated:  July 13, 2022

# EXHIBIT A

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

## FAMILY COURT DIVISION

**REBECCA MICHELLE MOSES,**

    Plaintiff,

vs.

Case No.: 20-503106-DM
Hon. Kameshia D. Gant

**DAVID ZACHERY MOSES,**

    Defendant.

_____

| | |
|---|---|
| BREITMEYER CUSHMAN PLLC<br>BY:  CAROL F. BREITMEYER (P35075)<br>Attorney for Plaintiff<br>607 Shelby Street, Suite 550<br>Detroit, MI 48226<br>313.962.4600 / FAX: 313.962.3600<br>email: breitmeyer@bcfamlaw.com | SERLIN, TRIVAX & ASSOCIATES, PC<br>BY:  DAVID B. TRIVAX (P38798)<br>Attorney for Defendant<br>37911 W. 12 Mile Road<br>Farmington Hills, MI 48331<br>248.633.2666<br>email: dtrivax@serlintraivax.com |

_____

## Consent Order for Financial Status Quo
## and Mutual Injunction

At a session of said court, held in the City of Pontiac,
County of Oakland, State of Michigan,

On    10/14/2020   _____

PRESENT:  HON:    KAMESHIA D GANT _____
                          Circuit Court Judge

    Upon agreement of counsel for the Plaintiff and Defendant the court being fully

advised in the premises;

    **IT IS HEREBY ORDERED:**

    1.    <u>Status Quo</u>. Plaintiff, **REBECCA MOSES**, and Defendant, **DAVID MOSES**,

shall be and hereby are required to maintain the existing status quo (continuing from the

Page 1 of 4

FILED    Received for Filing    Oakland County Clerk    10/16/2020 4:26 PM

first filing of this divorce action) with respect to their timely payment of all ongoing household and family expenses, including but not limited to (i) all mortgage payments, taxes, insurance and utility expenses for the parties' residences; (ii) all automobile payments; (iii) all automobile insurance payments; (iv) all health insurance premiums and deductible payments for the parties; (v) all necessary medical, dental, psychological, counseling, pharmaceutical, hospital and health insurance costs for the Plaintiff and Defendant, and (vii) sufficient monies for the support and maintenance, during the pendency, of Plaintiff and Defendant.

2.    Assets. During the pendency of this cause, or until further order of the court, Plaintiff and Defendant their agents, servants, employees and attorneys, and those persons in active concert or participation with them, who receive actual notice of this mutual temporary restraining order, by personal service or otherwise, are restrained and enjoined from:

a. Surrendering, cancelling, borrowing upon, using as collateral security, withdrawing the cash surrender value of, assigning, modifying, transferring, changing the beneficiary or beneficiaries of, or otherwise altering or causing any change to be made in any policy of life insurance, annuity, homeowners, health insurance or motor vehicle policies which either party owns or controls (individually or as trustee) or in which either party has any rights or interests (legal or equitable) as owner, beneficiary, insured or otherwise, or allowing said policies to lapse for non-payment;

b. Surrendering, redeeming, cashing in, withdrawing, assigning, modifying, transferring or encumbering any interest in any pension, retirement, profit sharing, bonus, savings, 401k, individual retirement account or stock purchase program in which either party has any interest or in which either party participates, or changing the beneficiary or beneficiaries of said programs or of any other benefit payable by reason of either party's employment in the event of either party's death, disability, retirement or termination. This shall include any action by either party which results in a decreased ability to pay, or increases a

need for support or family expenses;

c. Regarding personal assets: concealing, secreting, selling, assigning, transferring (including transfers to either party or to any other person as trustee, guardian or nominee), conveying, mortgaging or otherwise disposing of or encumbering any of either party's assets (real or personal, tangible or intangible), or any interest therein (legal or equitable), including, but not limited to: stocks, bonds or other securities, cash, savings accounts, checking accounts, automobiles, valuables contained in safe deposit boxes, or any other assets or business interests, household furniture, furnishings, except for reasonable and ordinary living expenses, without the prior order of this court; provided, HOWEVER, that the Plaintiff and Defendant may withdraw funds from his or her checking accounts in the ordinary course of business and for attorney fees;

d. Regarding business assets: concealing, secreting, selling, assigning or transferring to any other person as trustee, guardian, or nominee, conveying, mortgaging, or otherwise disposing of, or encumbering any of the parties' business assets (real or personal, tangible or intangible), including but not limited to: corporate stocks, bonds, or other securities, cash, savings accounts, checking accounts, automobiles, business fixtures, business equipment, business vehicles or any other business interests except in the ordinary course of business without the prior order of this court;

e. The Plaintiff and Defendant are further enjoined and restrained from removing any of the contents of the marital residences;

f. The Plaintiff and Defendant shall not directly or indirectly conceal from each other or destroy any family records, business records, or any records of income, debt, or other obligations;

g. The Plaintiff and Defendant shall not directly or indirectly change their estate plans or wills during the pendency of this action;

h. Excluded from this injunction are those transfers required for the necessities of life and those needed in the normal transaction of business;

i. The Plaintiff and Defendant shall be entitled to utilize an equal amount of marital funds for Attorney Retainer Fees.

j. This injunction may be lifted for any individual purpose upon the mutual agreement of the parties. Such agreement shall be in

Page 3 of 4

writing and signed by both parties and their attorneys.

3.      Violation of this Order may be punished by contempt of court, imposition of costs, fines, sanctions, an award of attorney fees and any and all other remedies allowed by operation of law.


**IT IS SO ORDERED.**


/s/ Kameshia D. Gant  10/14/2020
_____
HONORABLE KAMESHIA D. GANT        AB
OAKLAND COUNTY CIRCUIT COURT



/s/ Carol F. Breitmeyer                    /s/ David B. Trivax
                                          (via email permission 10/09/2020)

_____        _____
CAROL F. BREITMEYER (P35075)    DAVID B. TRIVAX (P38798)
Attorney for Plaintiff          Attorney for Defendant

# EXHIBIT B

DocuSign Envelope ID: 32D9F277-B324-4FB7-840D-C85E7419ADE2

STATE OF MICHIGAN
CIRCUIT COURT FOR THE COUNTY OF OAKLAND
FAMILY DIVISION

Rebecca Michelle Moses,

    Plaintiff,

vs.

David Zachery Moses,

    Defendant.

Case No. 2020-503106-DM
Hon: Kameshia D. Gant

| | |
|---|---|
| Findling Law, P.L.C.<br>Daniel Findling (P52575)<br>Morgan McAtamney (P80047)<br>Stephanie Smart (P84835)<br>Attorneys for Plaintiff<br>414 W. Fifth Street<br>Royal Oak, MI 48067<br>(248) 399-3300<br>daniel@findlinglaw.com<br>morgan@findlinglaw.com<br>stephanie@findlinglaw.com | Serlin, Trivax & Associates, PC<br>David Trivax (P38798)<br>Attorney for Defendant<br>37911 W. 12 Mile Rd.<br>Farmington Hills, MI 48331<br>(248) 633-2666<br>dtrivax@serlintrivax.com |

**STIPULATION AND ORDER REFERRING
DOMESTIC RELATIONS ISSUES TO BINDING ARBITRATION**

At a session of said Court, held in
City of Pontiac, County of Oakland,
State of Michigan, on __6/9/2021__
__KAMESHIA D GANT__
PRESENT:  Honorable Kameshia D. Gant, Family Division Judge

    The parties stipulate and agree to submit all issues to binding arbitration with attorney Kurt E. Schnelz, Esq.

    IT IS ORDERED:

(1)    That the all issues set forth in the current pending Complaint for Divorce are submitted for binding arbitration pursuant to the Uniform Arbitration Act 70.5001; MSA 27A.501; and MCR 3.602.

(2)    That Kurt E. Schnelz is appointed the Arbitrator (who shall also serve as discovery master) and the Arbitrator shall apportion payment of his fees and costs.

1

DocuSign Envelope ID: 32D9F277-B324-4FB7-840D-C85E7419ADE2

(3)     That all decisions of the Arbitration shall be binding on the parties and that a Judgment of Divorce or Orders, comporting with the decisions and/or awards of the Arbitrator, shall enter.

(4)     That the decisions and/or awards of the Arbitrator may not be set aside unless the Arbitrator (1) or another is guilty or corruption, fraud, or used other undue means, (2) evidenced partiality, corruption, or misconduct prejudicing a party's right, (3) exceeded his or her powers, or (4) refused to postpone the hearing on a showing of sufficient cause, refused to hear material evidence or conducted the hearing to substantially prejudice a party's rights.  MCR 3.602(j).

(5)     That both parties have been advised of the recent Court of Appeals case of *Miller vs. Miller*, 691 NW2d 788.  Both parties understand that they could insist on a formal arbitration which would include a full hearing.  The parties have decided, and it is the Order of the Court that the parties shall waive their right to a formal arbitration hearing and conduct the arbitration hearing in an informal manner.

(6)     In accordance with Court Rule and statute, the parties have signed an Arbitration Acknowledgement and Agreement, which is attached for filing.

Dated: _____

/s/ Kameshia D. Gant
June 9, 2021
Family Division Judge
HON. KAMESHIA D. GANT (P69425)  BF

Approved as to form and content,
notice and hearing on entry waived,
entry stipulated:

_____
Rebecca Michelle Moses, Plaintiff

_____
David Zachery Moses, Defendant

FINDLING LAW, P.L.C.
By: Daniel Findling (P52575)
Attorneys for Plaintiff

Serlin, Trivax & Associates, PC
By: David Trivax (P38798)
Attorneys for Defendant



2

# EXHIBIT C

STATE OF MICHIGAN
CIRCUIT COURT FOR THE COUNTY OF OAKLAND
FAMILY DIVISION

Rebecca Michelle Moses,

      Plaintiff,

vs.

David Zachery Moses,

      Defendant.

Case No. 2020-503106-DM
Hon: Kameshia D. Gant



| | |
|---|---|
| Findling Law, P.L.C.<br>Daniel Findling (P52575)<br>Morgan McAtamney (P80047)<br>Stephanie Smart (P84835)<br>Attorneys for Plaintiff<br>414 W. Fifth Street<br>Royal Oak, MI 48067<br>(248) 399-3300<br>daniel@findlinglaw.com<br>morgan@findlinglaw.com<br>stephanie@findlinglaw.com | Serlin, Trivax & Associates, PC<br>David Trivax (P38798)<br>Attorney for Defendant<br>37911 W. 12 Mile Rd.<br>Farmington Hills, MI 48331<br>(248) 633-2666<br>dtrivax@serlintrivax.com |

## MATRIMONIAL ARBITRATION ACKNOWLEDGEMENT AND AGREEMENT

This Agreement is entered with regard to Case Number 20-881635-DM, currently pending in the Oakland County Circuit Court, State of Michigan. The parties agree as follows:

1.    **Arbitrator.** The parties appoint Kurt E. Schnelz, Esq. as Arbitrator with authority to act as a discovery master, **or if he is unavailable or unable to serve as Arbitrator, the parties will mutually agree on another Arbitrator, and if the parties cannot agree, the Court will appoint one to decide the following issues in the above-captioned matter.**

      a.    All issues set forth in the pending divorce case including, but not limited to custody and parenting time related to the use of a nanny or child care, child support, the division of assets, operation and management of businesses in which the parties have an interest, enforcement of the current status Quo Order, liabilities, debts, spousal support, attorney and expert fees; and

1

b.      All current pending motions.

2.      Law.    The parties have been advised as follows:

a.      Arbitration is voluntary.

b.      Arbitration is binding and the right of appeal is limited.

c.      If there are allegations of domestic violence, arbitration must be specifically approved by the Court, on the record.

d.      Arbitration may not be appropriate in all cases.

3.      The Arbitrator's powers and duties are as specified in this Agreement, which must be signed by both parties before Arbitration can begin.

4.      During Arbitration, the Arbitrator has the power to decide the above referenced issues.  The Court will, however, enforce the Arbitrator's decisions on those issues pursuant to Court Order.

5.      Each party understands they may consult with an attorney before entering into the Arbitration process or may choose to be represented by an attorney throughout the entire process.

6.      Each party understands if they cannot afford an attorney, they may wish to seek free legal services, which may or may not be available.

7.      The cost of Arbitration, including payment of the arbitrator's fees, will be paid by the parties in accordance with the determination by the arbitrator, whereas the Court does not charge the parties to hear and decide issues, except for filing and other Court fees as required by statute or Court rule, which the parties understand they would have to pay regardless.

8.      The parties agree to be bound by the laws of the State of Michigan, during Arbitration process.  The parties also agree that the Rules of Evidence may be applied or relaxed at the sole discretion of the Arbitrator, during the proceedings.

9.      The parties hereby agree they are waiving any rights they may have as set forth in the *Miller vs. Miller*, 691 NW2d 788 (a copy of which has been provided to the parties), and agree that the Arbitration shall be binding, but may be informal at the Arbitrator's discretion.

10.     The parties agree to waive a court reporter during the Arbitration hearing.  The Arbitrator may tape record the proceeding for his own assistance in preparing the Arbitration award.  However, a record, which may be a tape recording, will be made concerning that portion of any hearing that concerns child support, parenting time, or those related to school for the minor children.  The parties may retain the services of a court reporter at their own expense (the parties shall equally divide the cost) in which case a copy of the transcript, if ordered, will be provided to the Arbitrator.

11.     The format for the Arbitration shall be solely determined by the Arbitrator, with the objective of expediting the hearing.



2

12.     Arbitration is currently set to commence on November 12, 2020 at 9:30 a.m. and November 16, 2020 at 9:30 a.m. Unless otherwise agreed by the parties, the hearing shall be held virtually during the COVID-19 pandemic. The Arbitration shall continue to take place as the parties' counsel and the Arbitrator agree.  Adjournments will be at the discretion of the Arbitrator.

13.     Except with the written consent of the other party or their counsel, no party or anyone acting on behalf of a party, shall have any private or ex-parte communication with the Arbitrator on any matter related to this proceeding.

14.     The parties will execute all documents, releases and agreements required by the Arbitrator.

15.     The Arbitrator shall have the authority to fashion any remedy available to the parties under the applicable Michigan law, at the sole discretion of the Arbitrator as set forth in the Michigan statutes and Michigan Court Rules governing arbitration and the issues in this matter.

16.     In the event of a discovery dispute, the matter shall be brought before the Arbitrator for resolution.   The Arbitrator may resolve any such issue by telephone conference call at his discretion. The parties or their counsel may raise such disputes via email, or other submission to the Arbitrator, which shall also be copied to the other side.   The Arbitrator will then set a time period for a response and other procedures necessary to resolve the dispute.

17.     If the parties wish to provide a pre-arbitration hearing brief containing a concise statement setting forth their respective factual and legal positions on the issues to be heard, it should be provided to the other party and the Arbitrator no later than 3 days before the commencement of the arbitration.  Neither party is required to submit such a brief, however.

18.     The parties are to provide a list of all anticipated witnesses, and the subject of their testimony, to the other party and the Arbitrator no later than 3 days before the commencement of arbitration.

19.     All documents or other exhibits upon which the parties or their experts intend to rely on at the hearing are to be provided to the other party and the Arbitrator at the time of the hearing. Rebuttal exhibits will be considered by the Arbitrator, but the Arbitrator expects that unless it is truly an unexpected issue, that such documents will have already been exchanged with the other side during the course of this proceeding.

20.     The Arbitrator shall afford each party a full and equal opportunity to present material of relevant proofs and to cross-examine witnesses. The Arbitrator shall be the judge of the materiality, relevancy and weight of the evidence offered and the credibility of witnesses.

21.     The Arbitrator shall require all witnesses to testify under oath and shall administer such oaths as authorized by law.

22.     The parties may subpoena witnesses or documents for the hearing pursuant to MCR 2.506.

23.     Each party shall have the right, at the conclusion of the hearing, to determine whether to present a closing argument. The Arbitrator shall decide whether post-hearing briefs are necessary,



3

and if so, when such briefs will be due and their length in light of the nature and complexity of the proceeding.

24.      The parties agree that they will not make any claim against the Arbitrator based on any act or omission in his role as Arbitrator in this proceeding and the Arbitrator is fully vested with judicial immunity.

25.      Upon completion of the final hearing, the Arbitrator will issue an award in writing and deliver a copy to each attorney.  The Arbitrator retains jurisdiction to correct errors or omissions in the Award until the Court confirms the Award.  Within 14 days after the award is issued, either party may file a motion to correct errors or omissions.  The other party may then respond to such motion within 14 days after the motion is filed.  The Arbitrator has the specific authority to make interim awards and decisions which shall be enforced by Court Order as well.

26.      All rights of appeal are limited to those provided by section 5081(1) and 5082 of the Act.

        The Undersigned have fully read and have voluntarily approved entry of this Acknowledgment and Agreement and Order submitting all issues in this matter to binding arbitration pursuant to the Domestic Arbitration Statute MCL 600.5070 - 5082.

Date: _____              _____
                                        Rebecca Michelle Moses, Plaintiff

Date: 6/4/2021                          _____
                                        David Zachary Moses, Defendant

Date: _____              _____
                                        Daniel Findling, Attorney for Plaintiff

Date: 6/4/21                            _____
                                        David Trivax, Attorney for Defendant

## ARBITRATOR'S OATH

        I do hereby accept the charge as arbitrator and agree to act with the scope of this Arbitration Agreement and court order appointing me as the arbitrator.  By my signature, I do solemnly affirm that I will fairly hear and consider all matters brought before me, and that I will make an appropriate award abiding by the Arbitration Agreement executed by the parties charging me with the responsibility to issue an award consistent with the authority placed in me by the parties.

Date: _____              _____
                                        Kurt E. Schnelz

4

# EXHIBIT D

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND
FAMILY DIVISION

REBECCA MICHELLE MOSES,

     Plaintiff,

                                    Case No. 20-503106-DM
-vs-                            Hon. Kameshia D. Gant

DAVID ZACHERY MOSES,

     Defendant.

_____/

| | |
|---|---|
| FINDLING LAW, PLC<br>Daniel Findling (P52575)<br>Attorney for Plaintiff<br>414 W. Fifth St.<br>Royal Oak, MI 48067<br>(248) 399-3300<br>daniel@findlinglaw.com | SERLIN, TRIVAX & ASSOCIATES, PC<br>David B. Trivax (P38798)<br>Attorney for Defendant<br>37911 W 12 Mile Road<br>Farmington Hills, MI 48331<br>(248) 633-2666<br>dtrivax@serlintrivax.com |
| | LAW OFFICE OF MICHAEL A. ROBBINS<br>Michael A. Robbins (P33884)<br>Co-Counsel for Defendant<br>3910 Telegraph Road, Ste. 200<br>Bloomfield Hills, MI 48302<br>(248) 646-7980<br>mrobbins@michaelarobbins.com |

_____/

## ORDER REGARDING HEARING HELD BEFORE ARBITRATOR KURT E. SCHNELZ ON OCTOBER 29, 2021

At a session of said Court, held in
City of Pontiac, County of Oakland
State of Michigan, on ___12/9/2021___, 2021

PRESENT:   HON.___KAMESHIA D GANT___
                       CIRCUIT COURT JUDGE

     The Defendant, David Moses, (hereinafter "David") and the Plaintiff, Rebecca

Moses, (hereinafter "Rebecca") (collectively "the Parties"), have submitted all issues in this

{01705408.DOCX;3 }

1

divorce matter for Arbitration with Kurt E. Schnelz pursuant to an Order of this Court and a written Arbitration Agreement, and the Court otherwise being fully informed in the premises:

**IT IS HEREBY ORDERED AND ADJUDGED:**

1.     Henry M. Nirenberg ("Mr. Nirenberg") has been appointed to effectuate the sale of all real estate properties 100% owned by Bet-lucy Holdings LLC and set forth on Exhibit A, and has express authority to sign on behalf of the Parties, Bet Lucy Holdings LLC and/or the marital estate, any listing agreements, offers to purchase, deeds, closing documents, instruments of title or other documents necessary to effectuate the sale, transfer, exchange and conveyance of said properties and said signature shall have the same legal effect as had an authorized individual signed same on behalf of the Parties, Bet Lucy Holdings LLC and/or the marital estate.

2.     Mr. Nirenberg is authorized to market and sell the subject properties, either individually or by lot, by private sale free and clear of all claims, liens, and encumbrances without redemption periods, after notice to all interested parties and in the case of real property, without the Arbitrator's approval unless the purchase price is less than the property values set forth on **Exhibit A.** Any and all properly recorded claims, liens, and encumbrances dated prior to August 2020 shall attach to the proceeds from any sale in the same rank, order and priority.

In the event there are recorded liens, claims or encumbrances dated after August 1, 2020 that must be released to consummate the sale and deliver free and clear title to the buyer, and a dispute exists regarding the validity of the post August 1, 2020 lien, Mr. Nirenberg may list and market the Property for sale and Mr. Nirenberg may direct the title

{01705408.DOCX;3 }

company to escrow the lien amount in dispute from the proceeds of sale pending a resolution between the parties and the lienholders.

3. Without limiting or expanding the foregoing, Mr. Nirenberg is authorized to exercise all powers generally available under the laws of the State of Michigan, including but not limited to MCL 600.2926, which may be incidental to the powers described in this Order, and to act on behalf of and in the name of the Defendant(s), as Mr. Nirenberg shall deem appropriate.

4. Notwithstanding the authority to list, market and sell the properties granted in paragraph 2 above, under no circumstances will Mr. Nirenberg be responsible for the actual management of the properties; nor shall he be responsible for paying or arranging to have paid any property taxes, insurance premiums, utilities, landscaping services, snow removal services, and/or general maintenance, repairs and upkeep on the properties.

5. Mr. Nirenberg shall not be responsible for collecting rents or security deposits from tenants, for enforcing terms of lease agreements with tenants, or for prosecuting claims and/or remedies afforded under such lease agreements or applicable law in the event of a tenant's breach; the obligations and responsibilities for enforcing such rights reside and continuing to reside in the Parties' management company.

6. Mr. Nirenberg shall not be liable for the payment of governmental fines or penalties related to environmental hazards contained within the structures of the subject properties or upon or under the land that comprises the subject property, nor shall Nirenberg be liable for the remediation of any environmental hazards (either naturally occurring or man-made) that are discovered within the structures or upon or under the land that comprises the subject properties. Nothing herein shall be interpreted or deemed to create in Mr. Nirenberg

{01705408.DOCX;3 }

3

personal liability for such charges or remediation costs. For purposes of this Order, "environmental hazards" shall include,  but not be limited to, *biological contaminants* (bacteria, viruses, fungi (including all molds), mildew, dust, dust mite allergen, animal dander, pollen, organic waste, cockroaches); *volatile organic compounds* (paints, lacquers, varnishes, paint strippers, cleaning supplies, pesticides, building materials and furnishings, office equipment); *asbestos; formaldehyde* (including pressed wood products that contains formaldehyde, plywood and resins); *lead; radon; pesticides; chemicals* (including chemical storage tanks, whether properly stored or illegally disposed of); *batteries; tires; petroleum and petroleum by-products;* all *industrial* and *manufacturing byproducts;* and *contaminated soil.* To the extent that any fines, penalties or similar governmental charges are assessed against the subject properties or to the extent that remediation costs are mandated and required, such charges, assessments, and costs shall be the sole responsibility of the Parties or, in the event of a separate agreement (e.g. a lease agreement), the responsibility of the party who assumed such responsibilities under the terms of such agreement.

7.    In connection with the sale of the subject properties, Mr. Nirenberg is authorized to hire a real estate broker, including offering a commercially reasonable commission upon the closing of a sale; to execute deeds of conveyance; attend and consummate closings at the offices of the title company acceptable to Nirenberg; approve closing statements with respect to any sales, including all costs of closing, sales commissions, and other adjustments to the purchase prices; obtain all mortgage and construction lien waivers, deeds, and such other documents as reasonably requested by the title company or Mr. Nirenberg to effectuate the sale(s), and to allow the issuance of the appropriate owner's policy of title insurance to each purchaser.

{01705408.DOCX;3 }

4

8.     The Parties shall be advised by Mr. Nirenberg of any proposed purchase of the subject properties before acceptance by Mr. Nirenberg and either party may submit a timely offer equal to or greater than the proposed offer which then shall be considered by Mr. Nirenberg, and he shall have sole authority to either accept or reject any such offer by the party. For purposes of this provision, a timely submitted offer shall be submitted to Mr. Nirenberg within twenty-four (24) hours of notice being given.

9.     Mr. Nirenberg shall submit an invoice to the Arbitrator, Kurt E. Schnelz, prior to the closing on a given property for his fees and costs associated with the contemplated sale, which fees and costs shall be paid to Mr. Nirenberg either at closing from the gross sale proceeds or by the Arbitrator.

10.     Any and all net proceeds received by Mr. Nirenberg through the sale of the subject properties shall immediately be deposited in the IOLTA account of the Arbitrator, Kurt E. Schnelz.

11.     David Moses and Rebecca Moses agree to defend, indemnify, and hold harmless Mr. Nirenberg, his agents, employees, and assigns from any and all claims, demands, suits, and causes of action arising out of the performance of his obligations under this order concerning the marketing and sale of any of the subject properties.

12.     David Moses and Rebecca Moses agree to cooperate with Mr. Nirenberg and to sign any documents reasonably and customarily required to effectuate the sale of a property, including, but not limited to seller disclosers.

13.     In the event that a proposed sale of a given property will not result in generating sufficient proceeds to pay all amounts due under any existing mortgage(s), liens, taxes (including real estate and transfer), commissions, closing costs and fees, and any other

{01705408.DOCX;3 }

5

obligations encumbering the property, then Mr. Nirenberg shall not be obligated to close on the property or to continue listing such property, unless or until the Parties agree to contribute the cash shortfall in order to effectuate the sale.

/s/ Kameshia D. Gant
December 9, 2021
_____
Family Division Judge Kameshia D. Gant   TAS

Approved as to form and content:

FINDLING LAW, P.L.C.

_____
Daniel Findling (P52575)
Attorney for Plaintiff

SERLIN, TRIVAX & ASSOCIATES, PC

_____
David B. Trivax (P38798)
Attorney for Defendant

LAW OFFICE OF MICHAEL A. ROBBINS

_____
Michael A. Robbins (P33884)
Co-Counsel for Defendant

{01705408.DOCX;3 }

6

| Property Address | City | Units | Value | Debt | Equity | Lender |
|---|---|---|---|---|---|---|
| 130 W Cornell | Pontiac | 1 | $ 77,000 | $ 34,797 | $ 42,203 | Waterford Bank |
| 178 High | Pontiac | 1 | $ 47,500 | $ 29,826 | $ 17,674 | Waterford Bank |
| 187 Parkdale | Pontiac | 1 | $ 70,000 | $ 34,797 | $ 35,203 | Waterford Bank |
| 189 High | Pontiac | 1 | $ 70,000 | $ 29,826 | $ 40,174 | Waterford Bank |
| 697 Livingston | Pontiac | 1 | $ 65,000 | $ 44,739 | $ 20,261 | Waterford Bank |
| 96 W Brooklyn | Pontiac | 1 | $ 95,000 | $ 39,768 | $ 55,232 | Waterford Bank |
| 965 Kettering | Pontiac | 1 | $ 75,000 | $ 37,283 | $ 37,717 | Waterford Bank |
| 22002 Rosedale | St. Clair Shores | 1 | $ 110,000 | $ 101,000 | $ 9,000 | Zebulon Ventures |
| 11454 Republic | Warren | 2 | $ 145,000 | $ 101,500 | $ 43,500 | First National Bank in Howell (0338) |
| 11464 Republic | Warren | 2 | $ 143,000 | $ 100,100 | $ 42,900 | First National Bank in Howell (0338) |
| 14046 Knox | Warren | 1 | $ 48,000 | $ 24,500 | $ 23,500 | First National Bank in Howell (0338) |
| 14961 Mona | Warren | 1 | $ 121,000 | $ 59,100 | $ 61,900 | First National Bank in Howell (0338) |
| 15119 Stephens | Eastpointe | 1 | $ 80,000 | $ 25,900 | $ 54,100 | First National Bank in Howell (0338) |
| 23191 Stewart | Warren | 1 | $ 115,000 | $ 80,500 | $ 34,500 | First National Bank in Howell (0338) |
| 769 Palmer | Pontiac | 1 | $ 88,000 | $ 61,600 | $ 26,400 | First National Bank in Howell (0338) |
| 8654 Studebaker | Warren | 1 | $ 125,000 | $ 87,500 | $ 37,500 | First National Bank in Howell (0338) |
| 8735 Packard | Warren | 1 | $ 130,000 | $ 91,000 | $ 39,000 | First National Bank in Howell (0338) |
| 11052 Studebaker | Warren | 1 | $ 110,000 | $ 77,000 | $ 33,000 | First National Bank in Howell (544) |
| 11257 Ford | Warren | 1 | $ 118,000 | $ 82,600 | $ 35,400 | First National Bank in Howell (544) |
| 21027 Gentner | Warren | 1 | $ 95,000 | $ 66,500 | $ 28,500 | First National Bank in Howell (544) |
| 2111 Otis | Warren | 1 | $ 103,000 | $ 72,100 | $ 30,900 | First National Bank in Howell (544) |
| 3776 Wasmund | Warren | 1 | $ 115,000 | $ 80,500 | $ 34,500 | First National Bank in Howell (544) |
| 69 Lincoln | Pontiac | 1 | $ 122,000 | $ 85,400 | $ 36,600 | First National Bank in Howell (544) |
| 11059 Paige | Warren | 1 | $ 50,000 | $ 24,780 | $ 70,220 | First National Bank in Howell (0338) |
| 8220 Hudson | Warren | 1 | $ 50,000 | $ 28,000 | $ 22,000 | First National Bank in Howell (0338) |
| 8646 Cadillac | Warren | 1 | $ 65,000 | $ 25,900 | $ 39,100 | First National Bank in Howell (0338) |
| | | 27 | $2,432,500 | $1,526,517 | $950,983 | |

# EXHIBIT E

AMENDED AGREEMENT TO PURCHASE REAL ESTATE

AGREEMENT dated MAY 31, 2022 ("Contract Date") by and between the following parties:

Rebecca Moses ("SELLER"), and The Tzedek Group LLC, on behalf of a(n) entity(ies) to be named later ("BUYER(s)")

The parties agree that the Seller will sell and Buyer will buy the following property at the terms of this amended agreement.

1. <u>SUBJECT PROPERTY:</u>

**See Addendum A for list of homes**

This sale includes the above-described real property and shall also include all personal property and fixtures, including attached lighting fixtures, ceiling fans, drapery, mailbox, sheds, fences, appliances, bidets and installed landscaping.

2. <u>TOTAL PURCHASE PRICE:</u> $1,000,000

3. <u>PAYMENT METHOD FOR PURCHASE:</u> Cash Sale

4. <u>TITLE & CLOSING:</u> Closing shall take place, on May 31, 2022. Seller shall convey title by General Warranty Deed, subject to taxes, existing zoning, covenants, restrictions and easements of record. Seller shall furnish buyer with a title policy without standard exceptions. If title evidence or survey reveal any defects which render the title unmarketable, Buyer or closing agent will have seven (7) days from receipt of title commitment and survey to notify Seller of such title defects. Seller agrees to use reasonable diligence to cure such defects at Seller's expense within 30 days. If Seller is unable to deliver marketable title or if Buyer is dissatisfied with the title commitment issued by the Title company for any reason, Buyer will have the right to terminate this agreement without Default penalty and shall be entitled to the immediate return of all Money paid.

5. <u>CLOSING COSTS:</u> Buyer and Seller shall pay the following costs at closing:
   · Transfer taxes to be paid by SELLER
   · Title Insurance Policy to be paid by SELLER
   · Recording Fee to be paid by BUYER
   · Closing Fee to be paid by BUYER

6. <u>PRORATIONS:</u> All property taxes, association fees, and assessments due and payable on or before date of closing, or which are confirmed, but not yet due or payable as of the date of closing, shall be paid by Seller at closing. Current taxes shall be prorated and adjusted as of date of closing in accordance with due date of municipality or taxing unit(s) in which Property is located.

7. <u>CONDITION OF PROPERTY:</u> Buyer accepts property in it's present "as is" condition. Seller understands that there will be no repairs requested to be done by Buyer except as otherwise provided for in this agreement.

8. <u>ASSIGNMENT OF AGREEMENT:</u> Buyer may market, negotiate, and resell the property to a third part(y)ies. Buyer may assign this agreement to another buyer without restriction. If this agreement is assigned, all rights, interests, suits, claims and titles in this agreement will be assigned to the new buyer and the assignor will be released from all liability.

9. <u>TENANT OCCUPIED PROPERTIES:</u> All rent paid in advance by Tenant shall be paid by Seller to Buyer at closing, including a prorated amount for the month of closing. All unpaid delinquent receivables related to current or prior tenants associated with Subject Property shall be disclosed by Seller and transferred to Buyer at closing. Buyer shall have the exclusive right to collect rents. Seller shall furnish Buyer with Application, Lease, Check-in Sheet, and detailed ledger dating back to the beginning of the most recent term for all tenants.

10. <u>DEFAULT:</u> If Buyer rescinds from the agreement after the above review is completed, Buyer shall pay Seller a $1,000.00 agreement release fee as full settlement of any claim whereupon both parties will be relieved of all obligations under this agreement. If Seller defaults, the Buyer may seek specific performance and damages resulting from Seller's breach.

11.<u>SCHMUCK INSURANCE</u>: That Parties acknowledge that due to the unique circumstances surrounding this sale, there is less than perfect information as the "value" of these homes. Buyer agrees that after all of his costs and a 15% (annualized) rate of return:
a) Buyer will share with Seller 50% of profits from any sale that occurs within 6 months of Closing
b) Buyer will share with Seller 25% of profits for any sale within the 365 days of closing.
c) Buyer will share with Seller 10% of profits for any sale within 2 years of closing

12.<u>CONFIDENTIALITY</u>

The Parties acknowledge that the premature disclosure of the existence of this Agreement and/or the subject matter of this Agreement may be adverse to their best interests and have therefore agreed to maintain in confidence the existence of this Agreement and its subject matter (collectively, the " Information") for a certain period of time. Accordingly, the Parties agree as follows:

The Parties agree not to and agree to direct each of their Representatives (as defined in this Section 12 (a)) not to, directly or indirectly, disclose, reveal, divulge, publish, or otherwise make known the Information to any person or entity for any reason or purpose whatsoever other than their Representatives and except as provided in Section 12(b) below. For the purposes of this Agreement, the "Representative" of the Parties means their respective directors, officers, counsel, employees, lender, or financial institution who have a need to know the Information. Explicitly excluded from this Section 12(a) are any disclosures necessary to effectuate the Closing (as defined in the Settlement Agreement) or any disclosures to the Parties' employees, agents, representatives, attorneys, accountants, members, partners, investors or any governmental body or agency.

Notwithstanding the provisions of Section 12(a), if a Party or any of its Representatives is required to disclose any Information pursuant to any applicable law, rule or regulation, that Party or that Representative, as the case may be, agrees to promptly notify the other Party in writing of any such requirement so that the other Party may seek an appropriate protective order or other appropriate remedy or waive compliance with the provisions of this Agreement. The Parties will reasonably cooperate with each other to obtain such a protective order or other remedy. If such order or other remedy is not obtained, or the other Party waives compliance with the provisions of this Agreement, the Party or its Representatives, as the case may be, will disclose only that portion of the Information which they are advised by counsel that they are legally required to so disclose and will obtain reliable assurance that confidential treatment will be accorded the information so disclosed.

13.<u>ADDITIONAL TERMS:</u> If any additional terms contradict any standard terms of this agreement, the additional terms shall replace the standard terms.

A) *All funds beyond the loan payoffs shall be held in escrow, as per terms of the escrow agreement.*

B) *Legal and physical possession of the Property, exclusive of, and without, any claims of possession or of occupancy by any other person or entity ("Possession") should transfer over to Buyer at closing. Recognizing the difficulty this presents for the Seller, Buyer will give Seller until June 1 2022 to transfer Possession of the property. If Possession of the property(ies) is not transferred to Buyer by June1, 2022, Seller will pay Buyer $1800.00 dollars per day (apportioned per property) "Transfer Fees" for every day until Possession is transferred to Buyer.*

**ADDENDUM / AMENDMENT A**

This addendum is part of a Purchase Agreement dated May 13, 2022 between Rebecca Moses as Seller(s) and The Tzedek Group LLC, on behalf of a(n) entity(ies) to be named later as Buyer(s) for property commonly known as <u>Listed on Amendment A (the "Purchase Agreement").</u>

For and in consideration of the mutual covenants, conditions, agreements and representations herein set forth, the parties agree to amend the Purchase Agreement as follows:

1.  **10095 Lasalle Blvd, Huntington Woods, MI 48070**
    Property ID:2520228007
    Legal Description: Lot 281, also ½ of the vacated alley, Bronx Subdivision, as recorded in Liber 13 of Plats, page(s) 22 & 22 1/2, Oakland County Records.

2.  **3994 Arcadia, Waterford, MI**
    Property ID:1335156019
    Legal Description: Lot 557, Elizabeth Lake Estates No.2, as recorded in Liber 27 of Plats, page 6, Oakland County Records.

3.  **7382 Yale, Lexington, MI**
    Property ID:26130300486000
    Legal Description: GREAT LAKES BEACH #3 LOTS 4860 to 4865 INCL. 7382 YALE

_____  5-31-2022          _____  5-31-22
Seller            Date                Buyer            Date

**14.AGREEMENT OF THE PARTIES:** This agreement contains the entire agreement of the parties and cannot be changed except by their written agreement.

Seller _____     Date_____ 5-31-2022 _____

Buyer _____     Date_____ 5-31-22 _____

# EXHIBIT F

7/11/22, 12:21 PM                    Search Summary State of Michigan Corporations Division



LARA Home    Contact LARA    Online Services    Logs    MILogin

**Corporations Online Filing System**
**Department of Licensing and Regulatory Affairs**

---

ID Number: 802860584                [Request certificate]  [Return to Results]  [New search]

Summary for:  TZEDEK COMPANY, LLC

The name of the DOMESTIC LIMITED LIABILITY COMPANY:   TZEDEK COMPANY, LLC

---

**Entity type:**   DOMESTIC LIMITED LIABILITY COMPANY

**Identification Number:** 802860584

---

**Date of Organization in Michigan:**  05/24/2022

---

**Purpose:** All Purpose Clause

---

**Term:**  Perpetual

---

**The name and address of the Resident Agent:**

Resident Agent Name:        FRANKLIN TEHAKO

Street Address:             4677 ACHILLA ST

Apt/Suite/Other:

City:              COMMERCE          State:  MI          Zip Code:   48382

**Registered Office Mailing address:**

P.O. Box or Street Address:    4677 ACHILLA ST

Apt/Suite/Other:

City:              COMMERCE          State:  MI          Zip Code:   48382

---

**Act Formed Under:**  023-1993 Michigan Limited Liability Company Act

**Acts Subject To:**  023-1993 Michigan Limited Liability Company Act

---

**Managed By:**

Members

---

**View filings for this business entity:**

ALL FILINGS
ANNUAL REPORT/ANNUAL STATEMENTS
CERTIFICATE OF CORRECTION
CERTIFICATE OF CHANGE OF REGISTERED OFFICE AND/OR RESIDENT AGENT
RESIGNATION OF RESIDENT AGENT
CERTIFICATE OF ASSUMED NAME

[View filings]

---

**Comments or notes associated with this business entity:**

# EXHIBIT G

## ESCROW AGREEMENT

This escrow agreement is made and entered into on May 13, 2022 (Contract Date) between Rebecca Moses (Seller) and Tzedek Group, LLC (Purchaser), collectively known as the Parties.

The Seller and Purchaser have entered into this escrow agreement for the sale and purchase of the subject properties:

1. **10095 Lasalle Blvd, Huntington Woods, MI 48070**
   Property ID:2520228007
   Legal Description: Lot 281, also ½ of the vacated alley, Bronx Subdivision, as recorded in Liber 13 of Plats, page(s) 22 & 22 1/2, Oakland County Records.

2. **3994 Arcadia, Waterford, MI**
   Property ID:1335156019
   Legal Description: Lot 557, Elizabeth Lake Estates No.2, as recorded in Liber 27 of Plats, page 6, Oakland County Records.

3. **7382 Yale, Lexington, MI**
   Property ID:2613030048600d0
   Legal Description: GREAT LAKES BEACH #3 LOTS 4860 to 4865 INCL. 7382 YALE

   1) If litigation is pursued or if a bona fide threat to litigation is made to challenge the validity of this deal, $100,000 will be returned to Buyer.

   2) Seller must inform Buyer of any attempts to block this transaction within 24 hours of her becoming aware of such attempts, if it is proven that seller waits more than 24 hours to inform Buyer of any such attempt ("required notice"), $10,000 per day shall be released from escrow until Buyer is given notice of the attempt to block the transaction

   3) If a Lis pendens is filed against any of the properties $50,000 per lis pendens filed, shall be transferred to Buyer from escrow

   4) If Possession of ownership is not transferred by June 1, 2022 pursuant to the PA (May 13) 2022 up to $1800/day shall be transferred to Buyer until such time as Possession is transferred without dispute. These fees shall accrue per property at a rate of 1000.00/day for Property 1. (as labelled above) $300.00 per day for Property 2 and $500.00 for Property 3.

   5) Both parties agree to a mutual non-disclosure agreement. Both parties agree not to share the contents of this agreement with any other parties. Unless compelled by a court, neither party shall make any disclosure of any material contents of this agreement. Even if compelled by a court both parties agree to $100,000 ("disclosure fee") if they release any information without the other parties' consent.

   6) If the potential penalties to seller exceed the amount held in escrow. The running out of escrow money shall not diminish any penalties incurred beyond that number. If all of the escrow money is turned over to Buyer and Seller incurs additional penalties, Seller shall be held personally liable for any additional costs beyond the escrow funds.

7) Seller agrees to indemnify Buyer for all costs and reasonable attorney fees Buyer incurs enforcing this agreement or defending any litigation commenced by third parties that relate to this agreement, beyond the escrow payments made. Seller agrees to secure its indemnity obligations by a lien against her membership interest in Bet Lucy, LLC.

8) Should Seller (or anyone else contesting possession) damage the Property(ies) before Possession is transferred to the Buyer, escrow funds should be transferred to Buyer to pay for repairs.

9) If none of these conditions are triggered and Buyer makes no escrow claims on July 1st, 2022 $100,000 of escrowed funds should be transferred to Seller. If Buyer still makes no claim on the escrow monies on August 1, 2022 an additional $100,000 in escrow shall be remitted to seller. The remainder of the Escrow money shall be transferred to Seller on September 1, providing the Buyer still has not made any claims to the escrow money.

10) Home Insurance and property taxes shall be pro-rated and the responsibility of seller until closing.

11) Anyone with personal property inside the three homes, provided they cooperate with this agreement, shall be able to remove personal property for 15 days after closing.

12) Unless otherwise stated all Capitalized terms in this agreement not otherwise defined have the same meaning as any given in the Purchase Agreement.

13) The Parties have appointed Kenneth Beams, PLLC (Escrow Agent) to hold $250,000.00 in accordance with the terms and conditions of the escrow agreement, listed below.

A.  The Seller and Buyer have agreed to appoint the Escrow Agent to hold the above amount for the term of this agreement.

B.  Furthermore, the Escrow Agent is willing and able to accept such responsibilities as well as act in compliance with this escrow agreement in its entirety.

C.  In the instance any disagreement shall arise, the Parties agree the Escrow Agent shall not be held liable for any costs, damages, or losses that may arise from duties performed.

D.  Furthermore, unless written permission has been received from the Parties by the Escrow Agent then no releases or disbursements shall be made.

E.  If such disagreement between the Seller and Purchaser does occur the Escrow Agent will have the right to be discharged from this agreement by turning all agreements and documentation over to the jurisdiction responsible for this agreement.

F.  Any and all costs to the Escrow Agent from such proceedings shall be the responsibility of the Seller and Purchaser.

G.  This agreement is for the benefit of the Escrow Agent, Seller and Purchaser.

H.  While both parties understand that there may be Third Party Beneficiaries to this escrow agreement, both Parties agree that no third party will be involved in any decisions for this escrow agreement.

I.  All funds received with regard to this escrow agreement shall be deposited into a federally insured bank money market account.

J.  Any fees due to the Escrow Agent, including shipping fees, at the time of disbursement request may be deducted from the escrow disbursement amount prior to disbursement.

K.  The Escrow Agent will not be permitted to combine personal accounts with the escrow funds at any time during the period of this escrow agreement.

L.  The Escrow Agent will hold any notifications and instructions they may receive as valid without the requirement to investigate or question the sender.

**Notification**

With written notice from both the Seller and the Purchaser the Escrow Agent will disburse the funds based on the instructions provided within such notice.

The written notice inclusive of directions for disbursement may be delivered in person or via email.

Notification must be provided to the Escrow Agent no less than 24 hours before the disbursements scheduled delivery.

**Liabilities**

Under the following circumstances the Escrow Agent shall not be held liable or found at fault,

- For any omission or error by a party other than the Escrow Agent themselves.
- Any loss of funds directly related to the suspension, insolvency, or failure of the funds or the bank themselves.
- Any legal proceedings between the Purchaser and Seller

By signing below all parties agree to have read and understand the terms and conditions outlined in this escrow agreement.

Seller _____   Date ___5-13-2022___

Buyer _____   Date ___5-13-22___

# EXHIBIT H

# PLEDGE AGREEMENT

THIS PLEDGE AGREEMENT (the "**Agreement**") is made and entered as of May 31, 2022, by and among Rebecca Moses (the "Indemnitor"), The Tzedek Group, LLC, a Michigan limited liability company ("Indemnitee"), and the undersigned holder of the pledged shares (the "**Pledge Holder**").

The Indemnitor and Indemnitee are parties to an Escrow Agreement, dated as of the date of this Agreement (the "**Note**"), under which Indemnitor agreed to indemnify the Indemnitee as set forth in the Escrow Agreement. The Indemnitor has agreed to secure its obligations (the "Obligations") to the Indemnitee with a pledge of, and thereby create a security interest in favor of the Indemnitee, its membership interest in Bet Lucy, LLC, a Michigan limited liability company (the "Membership Interest"), and to deliver an Assignment of Membership Interest to the Pledge Holder to perfect the pledge and security interest created by this Agreement. Accordingly, the parties agree as follows:

1.    **Security Interest**. Borrower hereby grants to Lender a security interest in (i) the Membership Interest, and (ii) all distributions (as defined below) to secure payment of the Obligations and performance of all Borrower's obligations under this Agreement. For purposes of this Agreement, the Membership Interest and distributions will be collectively referred to as the "**Collateral**."

2.    **Appointment of the Pledge Holder**. Borrower and Lender hereby designate and appoints the Pledge Holder as such for the purposes hereinafter set forth. Borrower hereby deposits with the Pledge Holder the Assignment of Membership Interest.

3.    **Rights and Obligations of the Pledge Holder**. Borrower and Lender hereby authorize the Pledge Holder to keep and preserve the Assignment of Membership Interest in its possession. If a default occurs under the terms of this Agreement or the Escrow Agreement, then Indemnitee shall provide written notice to the Indemnitor specifying the default and shall have the right to direct the Pledge Holder to dispose of the Membership Interest if Indemnitor has not cured the default within 30 days after receipt of the notice. In such event, the Pledge Holder, acting as agent of the Indemnitee, shall, with respect to the Membership Interest, exercise the rights and duties of a Secured Party under the Uniform Commercial Code as enacted in Michigan (the "UCC"), and under any other applicable law as the same may, from time to time, be in effect.

4.    **Rights of Borrower and Lender**. Upon any disposition of the Membership Interest by the Pledge Holder in accordance with the terms of Section 3 (*Rights and Obligations of the Pledge Holder*), the rights of Indemnitee and Indemnitor with respect to the proceeds of any such disposition shall be determined under the UCC and under any other applicable law, as the case may, from time to time, be in effect.

5.    **Covenants of Indemnitor**. Indemnitor hereby represents and warrants to Indemnitee that Indemnitor has good title (both record and beneficial) to the Collateral, free and clear of all claims, pledges, security interests, liens or encumbrances of every nature whatsoever, and that Indemnitor has the right to pledge and grant Indemnitee the security interest in the Collateral granted under this Agreement. Indemnitor agrees that, until its obligations under the Escrow Agreement have been fully performed, Indemnitor will not: (i) sell, assign or transfer, or attempt to sell, assign or transfer, any of the Collateral, (ii) grant or create, or attempt to grant or create, any security interest, lien, pledge, claim or other encumbrance with respect to any of the Collateral, (iii) suffer or permit to continue upon any of the Collateral during the term of this Agreement, an attachment, levy, execution or statutory lien, or (iv) admit any additional person or entity (other than Lender) as a member or otherwise make any change to its capitalization. There shall be no substitution of collateral under the terms of this Agreement without the prior written consent of the parties. Indemnitor hereby agrees to indemnify Indemnitee and Pledge Holder against any direct loss, reasonable cost or out-of-pocket expense incurred by holder in

connection with the Escrow Agreement and this Agreement and the exercise of any and all rights pertaining thereto, including, without limitation, all court costs, reasonable attorney's fees and other costs of collection.

6.    **Disputes**. In the event of a dispute with respect to the terms and provisions of this Agreement, the Pledge Holder shall not be required to resolve that dispute or take any action with respect thereto. The Pledge Holder may continue to hold the Membership Interest and await final resolution of the dispute by joint instructions from Indemnitor and Indemnitee and Lender or by a final determination of a court or arbitration panel of competent jurisdiction. In the alternative, the Pledge Holder may deliver the Membership Interest to a court of proper jurisdiction under an appropriate action in interpleader and thereupon be relieved of all responsibility under this Agreement and be entitled to represent Indemnitee in any such action.

7.    **Release of Shares**. When satisfactory proof has been presented to the Pledge Holder that all amounts due and all obligations owed under the Escrow Agreement (including accrued interest thereon) have been satisfied, the Pledge Holder shall deliver the Assignment of Membership Interest back to the Indemnitor all obligations by and among the parties under this Agreement shall thereupon cease.

8.    **Conduct of Pledge Holder**. The Pledge Holder shall not be required to exercise any standard of care greater than ordinary care in discharging its duties and obligations under this Agreement and the Pledge Holder shall not incur any liability to anyone for any damages, losses or expenses with respect to any action taken or omitted in good faith. The Pledge Holder shall have no duties other than those expressly imposed herein. The Pledge Holder may rely and shall be protected in relying upon any paper or other document that may be submitted to it in connection with its duties hereunder and that it believes to be genuine and to have been signed or presented by the proper party or parties and shall have no liability or responsibility with respect to the form, execution or validity thereof. The Pledge Holder may resign as such following the giving of 30 days prior written notice to the other parties hereto. Similarly, the Pledge Holder may be removed and replaced following the giving of 30 days prior written notice to the Pledge Holder by the other parties hereto. In either event, the duties of the Pledge Holder shall terminate 30 days after receipt of such notice (or as of such earlier date as may be mutually agreeable), and the Pledge Holder shall then deliver the Shares and any other related materials then in its possession to a successor pledge holder as shall be appointed by the other parties hereto as evidenced by a written notice filed with the Pledge Holder. If the other parties hereto have failed to appoint a successor prior to the expiration of 30 days following receipt of the notice of resignation or removal, the Pledge Holder may appoint a successor or petition any court of competent jurisdiction for the appointment of a successor pledge holder or for other appropriate relief, and any such resulting appointment shall be binding upon all of the parties hereto.

9.    **Notices**. Any notice, other communication or documents and statements required hereunder shall be sufficiently given if personally delivered or sent by nationally recognized overnight courier, postage prepaid, to such address as may be designated by any party to the other parties in writing. Notice shall be deemed received on the date actually delivered, if delivered personally, or on the second business day following the date deposited in the United States mail, if sent.

10.    **Wavier**. No delay or omission by Indemnitee in exercising any right or remedy hereunder shall operate as a waiver thereof or of any right or remedy, and no single or partial exercise thereof shall preclude any other or further exercise thereof or the exercise of any other right or remedy. All rights and remedies of Indemnitee hereunder are cumulative.

11.    **General**. No modification, rescission, waiver, release or amendment of any provision of this Agreement shall be made except by written agreement subscribed by Indemnitor and Indemnitee. An executed original of any such agreement shall be delivered to the Pledge Holder upon its execution and if such agreement affects the right, duties or obligations of the Pledge Holder under this Agreement, it must also be executed and agreed to by the Pledge Holder before the same shall have any legal effect. This Agreement shall be governed

under the laws of the State of Michigan, without regard to conflict of law principles. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Except as required by law, each party to this Agreement shall keep this Agreement, the Escrow Agreement, and the transactions contemplated by these agreements strictly confidential.

IN WITNESS WHEREOF, the parties have executed and delivered this Pledge Agreement on the date first set forth above.

INDEMNITOR

BY: _____
Rebecca Moses

INDEMNITEE

BY: _____
David Wolkinson
Its Member

AS PLEDGE HOLDER:
KENNETH R. BEAMS, PLLC

BY: _____
Kenneth R. Beams
Its Member

# EXHIBIT I

WARRANTY DEED
_____ MI-22835940-NLP

*KNOW ALL PERSONS BY THESE PRESENTS:* That: Rebecca  M. Moses, ("Grantor")

the address of which is: 29250 Creekbend, Farmington Hills, MI 48331

convey(s) and warrant(s) to: Lexiford Properties, LLC, ("Grantee")

the address of which is: 23307 Playview St, Saint Clair Shores, MI  48082

the following described premises situated in the Township of Worth, County of Sanilac, State of Michigan, to wit:

Lots 4860, 4861, 4862, 4863, 4864 and 4865, Great Lakes Beach No. 3, according to the recorded plat thereof as recorded in Liber 3, Page 14 of Plats, Sanilac County Records.

Commonly known as: 7382 Yale Rd, Lexington, MI 48450
Parcel ID No.:  261-303-004-860-00

together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, for the sum of Eighty Four Thousand and 00/100 Dollars (***$84,000.00***).

Subject to zoning, building and use restrictions, easements and right of way of record.

Dated this May 31, 2022

Signed by:

_____

Rebecca  M. Moses

State of Michigan                          )
                                                        )SS.
County of _OAKLAND_               )

The foregoing instrument was acknowledged before me on this 31st day of May, 2022 by Rebecca  M. Moses

MATTHEW A. CECI
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMISSION EXPIRES JUL, 29, 2024
ACTING IN COUNTY OF _OAKLAND_
OW

Notary Public: _____
Notary County: _____,State: _____
Commission Expires: _____
Acting In: _____

When Recorded return to:          Send Subsequent Tax Bills To:          Drafted By:
28550 TAVISTOCK TRL                Grantee                                            Rebecca  M. Moses
Southfield, MI 48034                                                                          29250 Creekbend
23307 Playview St                                                                            Farmington Hills, MI 48331
Saint Clair Shores, MI 48082                                                            Assisted by: ATA National Title Group,
                                                                                                       LLC

| American Land Title Association | ALTA Settlement Statement - Borrower/Buyer |
|---|---|
| | Adopted 05-01-2015 |

**File No./Escrow No.:** MI-22835940-NLP
**Print Date & Time:** 05/31/22 1:17 PM
**Officer/Escrow Officer:** Nicole Richards
**Settlement Location:**
ATA National Title Group, LLC - NLS
31440 Northwestern Hwy, Ste. 100
Farmington Hills, MI 48334

ATA National Title Group, LLC
**ALTA Universal ID:** 1033513
31440 Northwestern Hwy, Suite 100
Farmington Hills, MI 48334

ATA | National Lender Services

**Property Address:**    7382 Yale Rd
Lexington, MI 48450

**Borrower/Buyer:**    Lexiford Properties, LLC
23307 Playview St
Saint Clair Shores, MI 48082

**Seller:**    Rebecca M. Moses
29250 Creekbend
Farmington Hills, MI 48331

**Lender:**
**Loan Number:**    2002740294
**Settlement Date:**    05/31/2022
**Disbursement Date:**    05/31/2022
**Additional dates per state requirements:**

| Description | Borrower/Buyer Debit | Borrower/Buyer Credit |
|---|---|---|
| **Financial** | | |
| Sale Price of Property | $84,000.00 | |
| | | |
| **Prorations/Adjustments** | | |
| City Taxes from 06/01/2022 thru 06/30/2022 | $42.71 | |
| County Taxes from 06/01/2022 thru 11/30/2022 | $1,154.88 | |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Title - Electronic Recording Serv Fee | | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Recording Fee (Deed) to County Recorder | $35.00 | |
| | **Borrower/Buyer Debit** | **Borrower/Buyer Credit** |
| Subtotals | $85,232.59 | |
| Due From Borrower | | $85,232.59 |
| Totals | $85,232.59 | $85,232.59 |

Copyright 2015 American Land Title Association.
All rights reserved.

File # MI-22835940-NLP
Printed on: 05/31/22 1:17 PM

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize ATA National Title Group, LLC to cause the funds to be disbursed in accordance with this statement.

Lexiford Properties, LLC

By: David Wolkinson, Managing Member

ATA National Title Group, LLC

_____
Escrow Officer

5/31/22
_____
Date

| American Land Title Association | ALTA Settlement Statement - Seller |
|---|---|
| | Adopted 05-01-2015 |

| File No./Escrow No.: MI-22835940-NLP | ATA National Title Group, LLC |  |
|---|---|---|
| Print Date & Time: 05/31/22 1:17 PM | **ALTA Universal ID: 1033513** | |
| Officer/Escrow Officer: Nicole Richards | 31440 Northwestern Hwy, Suite 100 | |
| Settlement Location: | Farmington Hills, MI 48334 | |
| ATA National Title Group, LLC - NLS | | |
| 31440 Northwestern Hwy, Ste. 100 | | |
| Farmington Hills, MI 48334 | | |

| | |
|---|---|
| Property Address: | 7382 Yale Rd |
| | Lexington, MI 48450 |
| Borrower/Buyer: | Lexiford Properties, LLC |
| | 23307 Playview St |
| | Saint Clair Shores, MI 48082 |
| Seller: | Rebecca M. Moses |
| | 29250 Creekbend |
| | Farmington Hills, MI 48331 |
| Lender: | |
| Settlement Date: | 05/31/2022 |
| Disbursement Date: | 05/31/2022 |
| Additional dates per state requirements: | |

| Description | Seller Debit | Seller Credit |
|---|---|---|
| **Financial** | | |
| Sale Price of Property | | $84,000.00 |
| | | |
| **Prorations/Adjustments** | | |
| City Taxes from 06/01/2022 thru 06/30/2022 | | $42.71 |
| County Taxes from 06/01/2022 thru 11/30/2022 | | $1,154.88 |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Title - Electronic Recording Serv Fee | | |
| Title - Owner's Title Insurance to ATA National Title Group, LLC - NLS | $727.00 | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Transfer Tax to County Recorder | $92.40 | |
| State tax/stamps to County Recorder | $630.00 | |
| | | |
| **Payoff(s)** | | |
| Lender:     Payoff of First Mortgage Loan | $69,859.63 | |
| Total ($69,859.63) | | |

Copyright 2015 American Land Title Association.
All rights reserved.

File # MI-22835940-NLP
Printed on: 05/31/22 1:17 PM

|  | Seller | |
| --- | --- | --- |
|  | Debit | Credit |
| Subtotals | $71,309.03 | $85,197.59 |
| Due To Seller | **$13,888.56** | |
| Totals | $85,197.59 | $85,197.59 |

Copyright 2015 American Land Title Association.
All rights reserved.

File # MI-22835940-NLP
Printed on: 05/31/22 1:17 PM

WARRANTY DEED _____    MI-22835946-NLP

*KNOW ALL PERSONS BY THESE PRESENTS:* That: Rebecca M. Moses, ("Grantor")

the address of which is: 29250 Creekbend, Farmington Hills, MI 48331

convey(s) and warrant(s) to: Waterton Properties, LLC, ("Grantee")

the address of which is: 223 W. Ohio, Marquette, MI 49855

the following described premises situated in the Township of Waterford, County of Oakland, State of Michigan, to wit:

Lot 557, Elizabeth Lake Estates No. 2, as recorded in Liber 27 of Plats, Page 6, Oakland County Records.

Commonly known as: 3994 Arcadia Park Dr, Waterford, MI 48328
Parcel ID No.:  13-35-156-019

together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, for the sum of Fifty Three Thousand and 00/100 Dollars (***$53,000.00***).

Subject to zoning, building and use restrictions, easements and right of way of record.

Dated this May 31, 2022

Signed by:

_____

Rebecca M. Moses

State of Michigan                               )
                                                )SS.
County of OAKLAND                               )

The foregoing instrument was acknowledged before me on this 31st day of May, 2022 by Rebecca M. Moses

MATTHEW A. CECI
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMISSION EXPIRES JUL. 29, 2024
ACTING IN COUNTY OF OAKLAND

Notary Public: _____
Notary County: _____,State: _____
Commission Expires: _____
Acting In: _____

When Recorded return to: DW
28550 TAVISTOCK TRL
SOUTHFIELD MI 48034
223 W. Ohio
Marquette, MI 48855

Send Subsequent Tax Bills To:
Grantee

Drafted By:
Rebecca M. Moses
29250 Creekbend
Farmington Hills, MI 48331
Assisted by: ATA National Title Group, LLC

| American Land Title Association | ALTA Settlement Statement - Borrower/Buyer |
|---|---|
| | Adopted 05-01-2015 |

File No./Escrow No.: MI-22835946-NLP
Print Date & Time: 05/31/22 1:42 PM
Officer/Escrow Officer: Nicole Richards
Settlement Location:
ATA National Title Group, LLC - NLS
31440 Northwestern Hwy, Ste. 100
Farmington Hills, MI 48334

ATA National Title Group, LLC
ALTA Universal ID: 1033513
31440 Northwestern Hwy, Suite 100
Farmington Hills, MI 48334

**ATA | National Lender Services**

| Property Address: | 3994 Arcadia Park Dr |
| | Waterford, MI 48328 |
| | |
| Borrower/Buyer: | Waterton Properties, LLC |
| | 223 W. Ohio |
| | Marquette, MI 49855 |
| | |
| Seller: | Rebecca M. Moses |
| | 29250 Creekbend |
| | Farmington Hills, MI 48331 |
| | |
| Lender: | |
| Loan Number: | 0675096267 |
| Settlement Date: | 05/31/2022 |
| Disbursement Date: | 05/31/2022 |
| Additional dates per state requirements: | |

| Description | Borrower/Buyer | |
|---|---|---|
| | Debit | Credit |
| **Financial** | | |
| Sale Price of Property | $53,000.00 | |
| | | |
| **Prorations/Adjustments** | | |
| City Taxes from 06/01/2022 thru 06/30/2022 | $132.23 | |
| County Taxes from 06/01/2022 thru 11/30/2022 | $300.25 | |
| Rental Property Deposit | | $2,017.00 |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Title - Electronic Recording Serv Fee | | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Recording Fee (Deed) to County Recorder | $35.00 | |
| | **Borrower/Buyer** | |
| | Debit | Credit |
| Subtotals | $53,467.48 | $2,017.00 |
| Due From Borrower | | $51,450.48 |
| Totals | $53,467.48 | $53,467.48 |

Copyright 2015 American Land Title Association.
All rights reserved.

Page 1 of 2

File # MI-22835946-NLP
Printed on: 05/31/22 1:42 PM

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize <u>ATA National Title Group, LLC</u> to cause the funds to be disbursed in accordance with this statement.

Waterton Properties, LLC

By: David Wolkinson, Managing Member

ATA National Title Group, LLC

_____        5/31/22
Escrow Officer                                                          Date

Copyright 2015 American Land Title Association.
All rights reserved.

File # MI-22835946-NLP
Printed on: 05/31/22 1:42 PM

| American Land Title Association | ALTA Settlement Statement - Seller |
|---|---|
| | Adopted 05-01-2015 |

**File No./Escrow No.:** MI-22835946-NLP
**Print Date & Time:** 05/31/22 1:42 PM
**Officer/Escrow Officer:** Nicole Richards
**Settlement Location:**
ATA National Title Group, LLC - NLS
31440 Northwestern Hwy, Ste. 100
Farmington Hills, MI 48334

ATA National Title Group, LLC
**ALTA Universal ID:** 1033513
31440 Northwestern Hwy, Suite 100
Farmington Hills, MI 48334

**ATA | National Lender Services**

| Property Address: | 3994 Arcadia Park Dr |
| | Waterford, MI 48328 |
| | |
| Borrower/Buyer: | Waterton Properties, LLC |
| | 223 W. Ohio |
| | Marquette, MI 49855 |
| | |
| Seller: | Rebecca M. Moses |
| | 29250 Creekbend |
| | Farmington Hills, MI 48331 |
| | |
| Lender: | |
| | |
| Settlement Date: | 05/31/2022 |
| Disbursement Date: | 05/31/2022 |
| Additional dates per state requirements: | |

| Description | Seller | |
|---|---|---|
| | Debit | Credit |
| **Financial** | | |
| Sale Price of Property | | $53,000.00 |
| | | |
| **Prorations/Adjustments** | | |
| City Taxes from 06/01/2022 thru 06/30/2022 | | $132.23 |
| County Taxes from 06/01/2022 thru 11/30/2022 | | $300.25 |
| Rental Property Deposit | $2,017.00 | |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Title - Electronic Recording Serv Fee | | |
| Title - Owner's Title Insurance to ATA National Title Group, LLC - NLS | $556.50 | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Transfer Tax to County Recorder | $58.30 | |
| State tax/stamps to County Recorder | $397.50 | |
| | | |
| **Payoff(s)** | | |
| Lender:        Payoff of First Mortgage Loan to Mr. Cooper | $53,780.26 | |
| Total ($53,780.26) | | |

Copyright 2015 American Land Title Association.
All rights reserved.

Page 1 of 3

File # MI-22835946-NLP
Printed on: 05/31/22 1:42 PM

| | Seller | |
|---|---|---|
| | Debit | Credit |
| Subtotals | $56,809.56 | $53,432.48 |
| Due From Seller | | **$3,377.08** |
| Totals | $56,809.56 | $56,809.56 |

Copyright 2015 American Land Title Association.
All rights reserved.

File # MI-22835946-NLP
Printed on: 05/31/22 1:42 PM

**WARRANTY DEED**                                                    MI-22835944-NLP

*KNOW ALL PERSONS BY THESE PRESENTS:* That: Rebecca M. Moses, ("Grantor")

the address of which is: 29250 Creekbend, Farmington Hills, MI 48331

convey(s) and warrant(s) to: Tzedek Group LLC, ("Grantee")

the address of which is: 4677 Achilla St, Commerce, MI 48382

the following described premises situated in the City of Huntington Woods, County of Oakland, State of Michigan, to wit:

Lot 281, also 1/2 of the vacated alley, Bronx Subdivision, as recorded in Liber 13 of Plats, Page(s) 22 and 22 1/2, Oakland County Records.

Commonly known as: 10095 Lasalle Blvd, Huntington Woods, MI 48070
Parcel ID No.:  32-25-20-228-007

together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, for the sum of Six Hundred Thirteen Thousand and 00/100 Dollars (***$613,000.00***).

Subject to zoning, building and use restrictions, easements and right of way of record.

Dated this May 31, 2022

Signed by:

_____
Rebecca M. Moses


State of Michigan                          )
                                           )SS.
County of *OAKLAND*                        )

The foregoing instrument was acknowledged before me on this 31st day of May, 2022 by Rebecca M. Moses

MATTHEW A. CECI
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMISSION EXPIRES JUL, 29, 2024
ACTING IN COUNTY OF *OAKLAND*

Notary Public: _____
Notary County: _____,State: _____
Commission Expires: _____
Acting In: _____

When Recorded return to:
*28550 TAVISTOCK TRI*
*Southfield, MI 48034*
4627 Achilla St
Commerce, MI 48382

Send Subsequent Tax Bills To:
Grantee

Drafted By:
Rebecca M. Moses
29250 Creekbend
Farmington Hills, MI 48331
Assisted by: ATA National Title Group, LLC

| American Land Title Association | ALTA Settlement Statement - Borrower/Buyer |
|---|---|
| | Adopted 05-01-2015 |

| File No./Escrow No.: MI-22835944-NLP | ATA National Title Group, LLC | |
|---|---|---|
| Print Date & Time: 05/31/22 1:34 PM | **ALTA Universal ID: 1033513** | |
| Officer/Escrow Officer: Nicole Richards | 31440 Northwestern Hwy, Suite 100 | **ATA** National |
| Settlement Location: | Farmington Hills, MI 48334 | Lender Services |
| ATA National Title Group, LLC - NLS | | |
| 31440 Northwestern Hwy, Ste. 100 | | |
| Farmington Hills, MI 48334 | | |

| Property Address: | 10095 Lasalle Blvd |
|---|---|
| | Huntington Woods, MI 48070 |
| Borrower/Buyer: | Tzedek Group LLC |
| | 4677 Achilla St |
| | Commerce, MI 48382 |
| Seller: | Rebecca M. Moses |
| | 29250 Creekbend |
| | Farmington Hills, MI 48331 |
| **Lender:** | |
| **Loan Number:** | 2002712947 |
| **Settlement Date:** | 05/31/2022 |
| **Disbursement Date:** | 05/31/2022 |
| **Additional dates per state requirements:** | |

| Description | Borrower/Buyer | |
|---|---|---|
| | Debit | Credit |
| **Financial** | | |
| Sale Price of Property | $613,000.00 | |
| | | |
| **Prorations/Adjustments** | | |
| City Taxes from 06/01/2022 thru 06/30/2022 | $1,118.48 | |
| County Taxes from 06/01/2022 thru 11/30/2022 | $328.79 | |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Title - Settlement / Closing Fee to ATA National Title Group, LLC - NLS | $750.00 | |
| Title - Wire Fee | $75.00 | |
| to ATA National Title Group, LLC - NLS | | |
| Title - Electronic Recording Serv Fee | | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Recording Fee (Deed) to County Recorder | $35.00 | |

Copyright 2015 American Land Title Association.
All rights reserved.

File # MI-22835944-NLP
Printed on: 05/31/22 1:34 PM

| | Borrower/Buyer | |
|---|---|---|
| | Debit | Credit |
| Subtotals | $615,307.27 | |
| Due From Borrower | | $615,307.27 |
| Totals | $615,307.27 | $615,307.27 |

Copyright 2015 American Land Title Association.
All rights reserved.

File # MI-22835944-NLP
Printed on: 05/31/22 1:34 PM

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize <u>ATA National Title Group, LLC</u> to cause the funds to be disbursed in accordance with this statement.

Tzedek Group, LLC

_____
By: David Wolkinson, Managing Member

ATA National Title Group, LLC

_____          5/31/22
Escrow Officer                                                          Date

| American Land Title Association | ALTA Settlement Statement - Seller |
|---|---|
| | Adopted 05-01-2015 |

**File No./Escrow No.:** MI-22835944-NLP
**Print Date & Time:** 05/31/2022 1:34 PM
**Officer/Escrow Officer:** Nicole Richards
**Settlement Location:**
ATA National Title Group, LLC - NLS
31440 Northwestern Hwy, Ste. 100
Farmington Hills, MI 48334

ATA National Title Group, LLC
**ALTA Universal ID:** 1033513
31440 Northwestern Hwy, Suite 100
Farmington Hills, MI 48334

ATA | National Lender Services

| Property Address: | 10095 Lasalle Blvd |
| | Huntington Woods, MI 48070 |
| | |
| Borrower/Buyer: | Tzedek Group LLC |
| | 4677 Achilla St |
| | Commerce, MI 48382 |
| | |
| Seller: | Rebecca M. Moses |
| | 29250 Creekbend |
| | Farmington Hills, MI 48331 |
| | |
| Lender: | |
| | |
| Settlement Date: | 05/31/2022 |
| Disbursement Date: | 05/31/2022 |
| Additional dates per state requirements: | |

| Description | Seller Debit | Seller Credit |
|---|---|---|
| **Financial** | | |
| Sale Price of Property | | $613,000.00 |
| | | |
| **Prorations/Adjustments** | | |
| City Taxes from 06/01/2022 thru 06/30/2022 | | $1,118.48 |
| County Taxes from 06/01/2022 thru 11/30/2022 | | $328.79 |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Title - Electronic Recording Serv Fee | | |
| Title - Owner's Title Insurance to ATA National Title Group, LLC - NLS | $2,375.75 | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Transfer Tax to County Recorder | $674.30 | |
| State tax/stamps to County Recorder | $4,597.50 | |
| | | |
| **Payoff(s)** | | |
| Lender:      Payoff Level One to Level One Bank | $253,528.15 | |
|          Total ($253,528.15) | | |
| Payee:      Payoff Roundpoint to Roundpoint Mortgage Servicing | $363,727.83 | |

| Description | Seller | |
|---|---|---|
| | Debit | Credit |
| Corporation | | |
| Total ($363,727.83) | | |
| | | |
| Miscellaneous | | |
| Current Water Bill to City of Huntington Woods, MI Water Department | $229.38 | |

| | Seller | |
|---|---|---|
| | Debit | Credit |
| Subtotals | $625,132.91 | $614,447.27 |
| Due From Seller | | $10,685.64 |
| Totals | $625,132.91 | $625,132.91 |

Copyright 2015 American Land Title Association.
All rights reserved.

File # MI-22835944-NLP
Printed on: 05/31/22 1:34 PM

# EXHIBIT J

## Escrow Release Funds

As of June 15th Seller has not turned over Possession as pursuant to the Purchase Agreement and Escrow Agreement. As per the terms of Paragraph 4 of the escrow agreement Buyer is entitled to $1800.00/day (15 days) for every day after May 31 for which Seller fails to transfer Possession. As of today June 15th Buyer is entitled to $27,000.00 from the escrow funds. Seller and Buyer mutually agree and hereby request that the escrow agent transfer $27,000 to Buyer from escrow funds.

Seller_____     Date_____6-15-2022_____

Buyer_____     Date_____6-15-2022_____

DocuSign Envelope ID: CA7D9UCA-A2F7-4A41-A5C6-2BED2ACB6679

**Escrow Release Funds**

Pursuant to the PA and the Escrow Agreement, Seller and Buyer agree that Henry Nirenberg has been hired to block their purchase agreement. Mr. Nirenberg has made it clear that he is preparing litigation to further this purpose. As per the terms of Paragraph 1 Buyer and Seller agree that Buyer is entitled to a $100,000.00 distribution from the asset affective June 14. Mr. Moses' direct threat to sue in early June entitled the Buyer to an earlier distribution of this money, but he gave Seller time to see if this step was avoidable, it is not. By mutual agreement Seller and Buyer request that escrow agent transfer 100,000.00 to buyer effective immediately.

Seller_____   Date_____6-14-2022_____

Buyer_____   Date_____6-14-2022_____

DocuSign Envelope ID: 59999964-D13C-4F7E-8072-B9428FA4B21C

### Escrow Release Funds

On June 3, 2022 David Moses filed a lis pendens for the homes in Waterford and Huntington Woods. As per the terms of Paragraph 3 of the escrow agreement, Buyer is entitled to a release of 50,000.00 in escrow funds per lis pendens filed. Buyer and Seller agree that Buyer is entitled to a $100,000.00 distribution from the escrow affective June 5, 2022. Pursuant to the PA and the Escrow Agreement, and by mutual agreement Seller and Buyer request that escrow agent transfer 100,000.00 to buyer effective immediately.

Seller _____     Date_____ 6-5-2022 _____

Buyer _____     Date_____ 6-5-2022 _____

DocuSign Envelope ID: 71B7734A-BD67-4502-8A69-8B4B3DA0D807

### Escrow Release Funds

Pursuant to the PA and the Escrow Agreement, Seller and Buyer agree that Henry Nirenberg has been hired to block their purchase agreement. Mr. Nirenberg has made it clear that he is preparing litigation to further this purpose. As per the terms of Paragraph 1 Buyer and Seller agree that Buyer is entitled to a $100,000.00 distribution from the asset affective June 14. Mr. Moses' direct threat to sue in early June entitled the Buyer to an earlier distribution of this money, but he gave Seller time to see if this step was avoidable, it is not. By mutual agreement Seller and Buyer request that escrow agent transfer 100,000.00 to buyer effective immediately.

Seller _____   Date_____ 6-5-2022 _____

Buyer _____   Date_____ 6-5-2022 _____

# EXHIBIT K

**STATE OF MICHIGAN**
**IN THE OAKLAND COUNTY CIRCUIT COURT**
**FAMILY DIVISION**

REBECCA M. MOSES,

        Plaintiff,

vs.

DAVID Z. MOSES,

        Defendant.

Case No. 2020-503106-DM
Hon. Kameshia D. Gant
Arbitrator: Kurt Schnelz

_____
| **ORDER/AWARD APPOINTING** |
| **RECEIVER** |
_____

_____/

| | |
|---|---|
| Jordan S. Dizik (P76470) | David B. Trivax (P38798) |
| The Dizik Law Firm | Serlin, Trivax & Assoc., P.C. |
| Co-Counsel for Plaintiff | Attorneys for Defendant |
| 370 E. Maple Road-Ste. 300 | 37911 W. 12 Mile Road |
| Birmingham, MI 48009 | Farmington Hills, MI 48331 |
| (248) 712-1056 | (248) 633-2666 |
| jordan@diziklaw.com | dtrivax@serlintrivax.com |
| | |
| Josh Faber (P76986) | Michael A. Robbins (P33884) |
| Berlin Family Law Group PLLC | Law Office of Michael A. Robbins |
| Co-Counsel for Plaintiff | Co-Counsel for Defendant |
| 901 Wilshire Drive-Ste. 580 | 3910 Telegraph Road-Ste. 200 |
| Troy, MI 48084 | Bloomfield Hills, MI 48302 |
| (248) 655-7980 | (248) 646-7980 |
| jfaber@berlinfamilylawgroup.com | mrobbins@michaelarobbins.com |
| | |
| Tova Shaban (P38392) | Henry M. Nirenberg (P36847) |
| David T. Lin (P70764) | Seyburn Kahn, P.C. |
| Seyburn Kahn, P.C. | Special Master on behalf of Marital Estate |
| Counsel for Special Master | 2000 Town Center, Ste. 1500 |
| Henry M. Nirenberg | Southfield, MI 48075 |
| 2000 Town Center, Ste. 1500 | (248) 353-7620 |
| Southfield, MI 48075 | hnirenberg@seyburn.com |
| (248) 353-7620 | |
| tshaban@seyburn.com | |
| dlin@seyburn.com | |

_____
| **Before Arbitrator Kurt Schnelz** |
_____

_____/

{01752661.DOCX;4 }

## ORDER/AWARD APPOINTING RECEIVER

This matter comes before the Arbitrator on the Verified Motion and Brief to Appoint Receiver and For Other Relief, pursuant to MCR 2.622.  Due notice having been given, and the Arbitrator being fully advised in the premises;

### NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      Effective immediately, under MCR 2.622, Henry M. Nirenberg of Seyburn Kahn, P.C., 2000 Town Center, Suite 1500, Southfield, MI 48075 (hereinafter "Receiver"), is appointed as the Receiver of all of the following:

    (a)     the real properties situated at 10095 LaSalle Blvd, Huntington Woods, Michigan 48070, 7382 Yale, Lexington, Michigan 48450, and 3994 Arcadia Park Drive, Waterford, Michigan 48328 (collectively, the "Properties");

    (b)     all proceeds relating to such Properties; and

    (c)     all legal and equitable claims and causes of action, and rights to interim equitable and injunctive relief, including stays of eviction proceedings, arising from the sale or disposition of such Properties in violation of the Consent Order for Financial Status Quo and Mutual Injunction entered on October 14, 2020 (the "Injunction Order"), including without limitation, all rights and claims to enforce the Injunction Order and the Supplemental Arbitration Awards,

(everything identified in subparagraphs 1(a) through 1(c) above, collectively referred to as the "Receivership Estate"), together with full powers as Receiver of the Receivership Estate for the purpose of exercising the activities, duties and functions set forth in this Order.

2.      Rebecca Moses and David Moses shall cooperate with the Receiver in the transition of the management of the Receivership Estate and shall make available to the Receiver for inspection and copying all of their records concerning the Receivership Estate as shall be reasonably necessary for the Receiver to fulfill his activities, duties and functions under the terms of this Order.

## AUTHORITY OF RECEIVER

3.     Pursuant to the Court's inherent authority and MCR 2.622, the Receiver is hereby granted all powers and authority conferred by statutes and case law, to control, sell, encumber, take possession of, lease, liquidate, or compromise the Receivership Estate, subject to the Sales and Status Quo Conditions (defined below).

4.     The Receiver has express authority to sign as Receiver, on behalf of the Receivership Estate any checks, bank accounts, drafts, stocks, bonds, vehicle titles, or other instruments of title and said signature shall have the same legal effect as had an authorized individual signed same on behalf of the Receivership Estate.

5.     The Receiver has express authority to sign as Receiver, on behalf of the Receivership Estate, any listing agreements, offers to purchase, deeds, closing documents, instruments of title or other documents necessary to effectuate the sale, transfer, exchange and conveyance of the Receivership Estate, and said signature shall have the same legal effect as had an authorized individual signed same on behalf of the Receivership Estate.

6.     The Receiver is authorized to market and sell the Receivership Estate property by private sale free and clear of all claims, liens, and encumbrances without redemption periods, after notice to all interested parties and in the case of real property, subject to the Sales and Status Quo Conditions.  Any and all claims, liens, and encumbrances shall attach to the proceeds from any sale in the same rank, order and priority.

7.     The Receiver is authorized in the exercise of his business judgment, to operate the Receivership Estate under any and all existing agreements that are currently in place between the Receivership Estate, and any third party, but is not authorized to sell any real property without obtaining prior approval of the Court.

## THE RECEIVERSHIP ESTATE

8.     Immediately upon entry of this Order and continuing until the termination of the Receiver's appointment, the Receiver is authorized to take reasonable and appropriate actions to prevent waste and to preserve, manage, maintain, secure, lease and safeguard the Receivership Estate during the period of receivership. The Receiver, in the exercise of his business judgment, shall be empowered, but not obligated, to:

    a.     Preserve, hold and manage the Receivership Estate, and perform all acts necessary to preserve its value, to prevent any loss, damage or injury;

    b.     Prevent the withdrawal or misapplication of funds;

    c.     Sue for, collect, receive, and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, documents, books, records, work papers, and records of amounts, including computer-maintained information, and other papers of the Receivership Estate;

    d.     File, commence, petition, litigate, defend, compromise/settle, adjust, intervene in, dispose of, or become a party to any actions or proceedings, including eviction proceedings, fraud proceedings, contempt proceedings, quiet title actions, proceedings under any voidable transfer acts, and those under Title 11 of the United States Code, in state, federal or foreign court necessary to preserve the Receivership Estate or to carry out his duties pursuant to this Order.  Such actions and proceedings may include any claims, causes of action, actions or proceedings relating to the Properties and the proceeds of such Properties;

    e.     Choose, engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

    f.     Serve and enforce Written Discovery and Subpoenas under the Michigan Court Rules to obtain information, documents and records pertaining to and on behalf of the Receivership Estate;

    g.     Open one or more bank accounts as designated depositories for funds of the Receivership Estate. The Receiver may deposit all funds of the Receivership Estate in such designated accounts and shall make all payments and disbursements from the Receivership Estate from such accounts; and

     h.    Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of the Court, or exercising the authority granted by this Order.

9.    Immediately upon entry of this Order and continuing until his discharge, the Receiver is authorized to take any reasonable and appropriate actions to prevent waste and to preserve, manage, maintain, secure, lease and safeguard the Receivership Estate during the receivership. Without limiting the generality of the foregoing, the Receiver, in the exercise of his business judgment, may:

     a.    To the extent funds are available, pay such sums as are necessary for the preservation, upkeep, and security of the Receivership Estate;

     b.    Allow the parties and their respective counsel access at reasonable times to inspect the Receivership Estate;

     c.    Collect any unpaid or delinquent rents, revenues, issues, and profits, regardless of when accrued, and to prosecute collection or similar proceedings;

     d.    To the extent funds are available, pay any real estate and personal property taxes and any other taxes or assessments against the Receivership Estate, as reasonably necessary to avoid forfeiture or loss;

     e.    Enforce termination or approve any contracts and/or agreements regarding the Receivership Estate; and

     f.    Sell all or any portion of the Receivership Estate, consistent with his authority under this Order and subject to the Sales and Status Quo Conditions.

10.    The Receiver is authorized to exercise all rights reserved or granted to the Receivership Estate under any mortgage, or under Michigan or Federal law.

11.    The Receiver is authorized to investigate any transfers or financial transactions relating to the Receivership Estate, to determine whether any such transactions were in violation of the Injunction Order, Supplemental Arbitration Award or otherwise unlawful or improper under applicable statute or law.

12.     The Receiver shall not be responsible for the preparation or filing of any tax returns for the Receivership Estate (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to provide the parties with information in the Receiver's possession which may be necessary for the parties to prepare and file tax returns.

## DIRECTIVES TO FINANCIAL INSTITUTIONS, EMPLOYERS AND OTHERS

13.     Pending further order of the Court, any financial or brokerage institution, business entity, or person, that holds, controls, or maintains custody of any escrow account, account or asset, or has held, controlled, managed or maintained custody of any escrow account, account or asset owned by, in the name or for the benefit of the Receivership Estate, or that holds or maintains any proceeds of the Properties, shall:

a.      Prohibit the parties and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of any such asset of the Receivership Estate except as directed by the Receiver;

b.      Deny the parties and all other persons access to any safe deposit box that is titled in the name of the Receivership Estate, either individually or jointly with another person or entity;

c.      Provide the Receiver, within five (5) business days of receiving a copy of this Order, a statement setting forth:

i.      the identification number of each and every account or asset titled in the name, individually or jointly, of, or held on behalf of, or for the benefit of the Receivership Estate;

ii.      the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed to close the account, and the name of the person or entity to whom such account or other asset was remitted;

iii.      the identification of any safe deposit box that is either titled in the name of the Receivership Estate, or jointly with, another person or

entity or is otherwise subject to access by the Receivership Estate; and

iv. upon request by the Receiver, promptly provide copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, and all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

14. Any savings, bank or similar institutions receiving a copy of this Order shall accept the signature of the Receiver to withdraw any and all funds of the Receivership Estate that the Receivership Estate have the right to withdraw from said institution with the same legal effect as had an authorized individual signed same on behalf of the Receivership Estate.

15. Any savings, bank or similar institutions receiving a copy of this Order shall forthwith turn over to the Receiver, Henry M. Nirenberg, any and all contents of any safety deposit boxes, owned by or on behalf of or which contains any asset of the Receivership Estate.

## DELIVERY OF POSSESSION OF RECEIVERSHIP ESTATE TO RECEIVER

16. The Court commands the Sheriff of Oakland County, or any other court officer that the Receiver may choose to employ, to deliver, without delay, to the Receiver, possession of the Properties and the Receivership Estate, and if necessary use FORCE as required, and if any of the Properties are not voluntarily opened to use a locksmith for said purpose. However, this is subject to the Sales and Status Quo Conditions.

17. As soon as practicable after service of this Order upon the Parties, and any other person or entity served with a copy of this Order, subject to the Sales and Status Quo Conditions (defined below), he/she shall deliver to the Receiver:

a. Possession and custody of all funds, assets, property, and all other assets, owned beneficially or otherwise, wherever situated of the Receivership Estate;

b.      Possession and custody of all documents, including without limitation, all purchase agreements, title documents, escrow agreements, and indemnification agreements, of the Receivership Estate, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), title documents and other papers;

c.      Possession and custody of all precious metals, other commodities, funds, and other assets being held by or on the behalf of the Receivership Estate;

d.      All keys, computer passwords, entry codes, and combination locks necessary to gain access or to secure access to any of the assets or documents of the Receivership Estate, including by not limited to; means of communications, account, computer systems, or other property; and

e.      Information identifying the accounts, properties or other assets or obligations of the Receivership Estate.

## POSSESSION OF DOCUMENTS AND RESTRAINT ON DESTRUCTION

18.      Rebecca Moses and David Moses shall each cooperate with the Receiver in the transition of control of the Receivership Estate and shall make available to the Receiver for inspection and copying all of their records concerning the Receivership Estate as shall be reasonably necessary for the Receiver to fulfill his activities, duties, and functions under the terms of this Order.

19.      The Receiver is granted the power to take immediate possession of and to copy: all books, records, notes, memoranda, purchase agreements, title documents, escrow agreements, indemnification agreements, loan documents, deeds, bills of sale, canceled checks, checks, check ledgers, calendar notes, diary notes, notes, records, books, ledgers, electronically stored and computer data (including e-mail), tape recordings, and computer discs, or any other financial documents or financial information in whatever form belonging to the Receivership Estate, or any businesses owned or operated by the Receivership Estate.

20.      Rebecca Moses, and all persons or entities who receive notice of this Order by

email, personal service, certified mail, overnight delivery or otherwise, including but not limited to, David Wolkinson, Tzedek Company, LLC, Lexiford Properties, LLC, and Waterton Properties, LLC, Kenneth R. Beams, PLLC, and any agent, employee, or representative of same, are prohibited, restrained, and enjoined from directly or indirectly destroying, mutilating, erasing, altering, concealing, or disposing of, in any manner, directly or indirectly, any documents that relate to the sale of the Properties, the disposition of the proceeds of sale of the Properties and/or the finances of the Receivership Estate.

21.     Rebecca Moses, and all persons or entities who receive notice of this Order by email, personal service, certified mail, overnight delivery or otherwise, including but not limited to, David Wolkinson, Tzedek Company, LLC, Lexiford Properties, LLC, and Waterton Properties, LLC, Kenneth R. Beams, PLLC, and any agent, employee, or representative of same, shall surrender to the Receiver all monies currently in their possession that were proceeds of the sales of the Properties, whether currently or previously held in escrow or disbursed from escrow, or which otherwise belong to or are payable to the Receivership Estate.

## RESTRAINT ON TRANSFER OF RECEIVERSHIP ESTATE

22.     Except as otherwise ordered by the Court, Rebecca Moses and all persons or entities who receive notice of this Order by email, personal service, certified mail, overnight delivery or otherwise, including but not limited to, David Wolkinson, Tzedek Company, LLC, Lexiford Properties, LLC, and Waterton Properties, LLC, Kenneth R. Beams, PLLC, and any agent, employee, or representative of same, are prohibited, restrained, and enjoined from directly or indirectly:

a.     Transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of the Receivership Estate or any of the Properties, except as otherwise

ordered by the Court; and

b.    Filing, commencing, litigating, prosecuting, and continuing any summary proceedings to evict any tenants as to any of the Properties.

## DISTRIBUTION

23.    To the extent funds are available, the Receiver may pay the ordinary expenses of the Receivership Estate, but may not distribute the funds in the Receivership Estate to a party to the action without an Order of the Court.

## RESTRAINT ON ACTION AGAINST RECEIVER AND RECEIVERSHIP ESTATE

24.    Except by leave of the Court or the Receiver's exercise of his duties, obligations and powers conferred in this Order or under Michigan law, during the pendency of the receivership, the parties, and all persons or entities who receive notice of this Order by email, personal service, certified mail, overnight delivery or otherwise, including but not limited to, David Wolkinson, Tzedek Company, LLC, Lexiford Properties, LLC, and Waterton Properties, LLC, Kenneth R. Beams, PLLC, and any agent, employee, or representative of same, be and hereby are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of the Receivership Estate, the Receiver, or the Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following:

a.    Filing, commencing, prosecuting, litigating or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

b.    Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, the Receivership Estate, any of the Properties, or attempting to foreclose, forfeit, alter or terminate any of the Receivership Estate interests in property, whether such acts are part of a judicial proceeding or otherwise;

c.    Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution, order of eviction or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Receivership Estate or any of the

Properties, wherever located, owned by or in the possession of a person or entity, or the Receiver, or any agent of the Receiver; and

d.      Doing any act or thing to interfere with the Receiver taking control, possession or management of the Properties and the Receivership Estate or any property subject to the receivership, or to in any way interfere with the Receiver or the duties of the Receiver; or to interfere with the exclusive jurisdiction of the Court over the Properties and Receivership Estate, subject to the Sales and Status Quo Conditions.

25.     Until further order of the Court, the parties, their agents, and all persons or entities who receive notice of this Order by email, personal service, certified mail, overnight delivery or otherwise, including but not limited to, David Wolkinson, Tzedek Company, LLC, Lexiford Properties, LLC, and Waterton Properties, LLC, Kenneth R. Beams, PLLC, and any agent, employee, or representative of same, are **RESTRAINED AND ENJOINED** from directly or indirectly transferring, encumbering, removing, expending, distributing, concealing, destroying, mutilating, damaging, erasing, altering, disposing of, or otherwise diminishing or causing harm to the Properties and any of the Receivership Estate, doing any act to interfere with the Receiver from taking control, possession, or management of the Properties and Receivership Estate (subject to the Sales and Status Quo Conditions), or to in any way interfere with the Receiver or the duties of the Receiver, or to interfere with the exclusive jurisdiction of the Court over the Properties and Receivership Estate.

## SALES AND STATUS QUO CONDITIONS

26.     Each of the following are defined herein as "Sales and Status Quo Conditions":

a.      Notwithstanding anything to the contrary in this Order, the Receiver shall not interfere with the valid occupancy of any occupants, residents, or tenants at any of the Properties whose occupancy, residence, or tenancy validly exists or existed immediately prior to the May 31, 2022 sales of the Properties.  Such occupancy, residence, or tenancy of such Properties on the date immediately prior to the May 31, 2022 sales of the Properties shall be preserved, unless otherwise modified by award/order of the Arbitrator or the Court; and

b.      Notwithstanding anything to the contrary in this Order, the Receiver shall not sell or cause the sale of any of the Properties without first obtaining approval for such sale(s) under an award/order entered by the Arbitrator or the Court.

## INSURANCE

27.     The parties shall be responsible for the maintenance of any liability, fire, theft, general and professional liability, title, and workers' compensation, vandalism, property damage or any other insurance required for the Receivership Estate. To the extent permissible, the Receiver and any petitioning secured creditor shall be named as additional insureds on all policies and as mortgagee or as their interests otherwise appear on all casualty policies, and the Receivership Estate shall reasonably cooperate with the Receiver in obtaining the required insurance.

## LEASES AND CONTRACTS

28.     The Receiver is authorized to execute, modify, amend, extend or terminate leases regarding the Receivership Estate, subject to any secured creditor's approval.

29.     The Receiver shall not be liable for any claim, obligation, liability, action, cause of action, cost, or expense of the Receivership Estate arising out of or relating to events or circumstances occurring prior to this Order, including, without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of the Receivership Estate, and any liability to which the Receivership Estate is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use, or operation of the Receivership Estate (collectively, the "Pre-Receivership Liabilities"). Except as otherwise stated herein, the Receiver shall not be obligated to pay any of the Pre-Receivership Liabilities.

## REPORTS AND ACCOUNTINGS

30. The Receiver shall account for all receipts, disbursements and distributions of money and property of the Receivership Estate.

31. The Receiver shall file with the Court and serve on the parties and those interested who may have appeared, a periodic accounting of all receipts and disbursements concerning the performance of its duties under this Order and a final accounting upon discharge.

32. The Receiver shall file quarterly reports as to the status of the Receivership.

33. The Receiver shall file with the Court a final written report and final accounting of the administration of the Receivership Estate.

## COMPENSATION OF RECEIVER

34. The Receiver shall receive reasonable compensation for his services.

35. The Receiver shall also be entitled to reimbursement for reasonable fees and out-of-pocket expenses related to the performance of his duties as Receiver.

36. All compensation of the Receiver is subject to final review and approval of the Court.

37. The Receiver shall receive reasonable compensation for its services. The Receiver's compensation shall be paid (1) first from the $50,000 in proceeds set aside from the marital estate in this case as referenced in Paragraph 5 of the Supplemental Arbitration Award of Arbitrator Kurt Schnelz, and then (2) from other proceeds, income, and assets of the marital estate in this case. If there are insufficient funds to pay the Receiver's fees and expenses, Receiver may petition the court to determine the compensation to be paid and to decide which party, person, or entity (including any additional parties joined to this case) will be responsible for the payment of some or all of the Receiver's compensation. Until further order from the Court, the Receiver shall receive

compensation at the rate of $400.00 per hour for his services, $375.00 for Partners, $325.00 for Associates, and $100.00 - $160.00 per hour for the services of paralegals. The Receiver shall also be entitled to be reimbursed for reasonable fees and out-of-pocket expenses related to the performance of its duties as Receiver. The Receiver may receive payment on a monthly basis, without further Court Order, provided no objections are filed with the Receiver within fifteen (15) days after notice is sent by electronic mail to all the parties. In the event an objection is timely filed, the objecting party shall file a motion with the Court within seven (7) days after objecting to determine the propriety of the fees sought, or its objections will be waived.

## IMMUNITY OF RECEIVER

38.     The Receiver and his employees, agents, and attorneys, shall not be liable for any claim, obligation, liability, action, cause of action, cost, or expense of the Receivership Estate arising out of or relating to Pre-Receivership Liabilities.

39.     The Receiver and his employees, agents, and attorneys, shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their intentional tortious acts, breaches of fiduciary duty, gross negligence, gross or willful misconduct, acts committed in bad faith, malicious acts, and/or the failure to comply with the Court's Orders.

## ENVIRONMENTAL LANGUAGE

40.     The Receiver shall not be liable for the payment of governmental fines or penalties related to environmental hazards contained within the structures of any property of the Receivership Estate or upon or under the land that comprises any property of the Receivership Estate, nor shall the Receiver be liable for the remediation of any environmental hazards (either naturally occurring or man-made) that are discovered within the structures or upon or under the

land that comprises any property of the Receivership Estate. Nothing herein shall be interpreted or deemed to create in the Receiver personal liability for such charges or remediation costs. For purposes of this Order, "environmental hazards" shall include, but not be limited to, *biological contaminants* (bacteria, viruses, fungi (including all molds), mildew, dust, dust mite allergen, animal dander, pollen, organic waste, cockroaches); *volatile organic compounds* (paints, lacquers, varnishes, paint strippers, cleaning supplies, pesticides, building materials and furnishings, office equipment); *asbestos*; *formaldehyde* (including pressed wood products that contains formaldehyde, plywood and resins); *lead*; *radon*; *pesticides*; *chemicals* (including chemical storage tanks, whether properly stored or illegally disposed of); *batteries*; *tires*; *petroleum and petroleum by-products*; all *industrial* and *manufacturing by-products*; and *contaminated soil*. To the extent that any fines, penalties or similar governmental charges are assessed against any property of the Receivership Estate, or to the extent that remediation costs are mandated and required, such charges, assessments, and costs shall be the sole responsibility of the parties or, in the event of a separate agreement (e.g. a lease agreement), the responsibility of the party who assumed such responsibilities under the terms of such agreement.

## BOND AND ACCEPTANCE OF RECEIVER

41.     The Receiver's duty to act in that capacity is subject to the filing of a written acceptance of the terms of this Order. Upon acceptance, the Receiver shall be bound by the terms of this Order, and all obligations imposed hereby.

42.     Bond requirement is waived, pursuant to MCR 2.622(G)(4), insofar as a substantial amount of the Receivership Estate cannot be sold without further order of the Court

## RECORDATION

43.     The Register of Deeds shall accept a certified copy of this Order for recording

against the Receivership Estate, any of the Properties, and any other real property in which the Receiver determines that the Receivership Estate have an interest.

## REMOVAL OF RECEIVER

44.    After notice and hearing, the Court may remove the Receiver by Order for good cause shown.  If the Receiver is removed, the Court may appoint a successor receiver unless the Court determines that the receivership is no longer practical or required.

45.    In the discretion of the Receiver, the Receiver may notify the Court and the parties that the receivership is no longer practical.  Upon such event, the Receiver's duties shall terminate upon entry of an Order of the Court terminating the receivership.

46.    Within forty-five (45) days after the termination of the receivership for any reason, the Receiver shall submit a final accounting, with copies to be furnished to the parties to this action.  Upon the Court's approval of the Receiver's final accounting, the Receiver shall be discharged of any further obligations of the receivership.

## RETENTION OF JURISDICTION

47.    The Court shall retain jurisdiction to resolve disputes under or related to this Order.

## MISCELLANEOUS

48.    The entry of this Order is without prejudice to any and all rights of the Receivership Estate to any claim, right, or defense, including construction liens, redemption rights and all foreclosure rights as to any future proposed sale by the Receiver or the Court.

49.    This Order may be amended with or without cause, either upon the stipulation of the Receiver and the parties, or, after a motion and hearing.

50.    If there exists any inconsistency between any prior Orders of the Court and the terms of this Order, the terms of this Order shall control.

51.     This Order shall be filed with the Court to seek its confirmation and approval.

**IT IS SO ORDERED.**

_____
Kurt E. Schnelz
Court-Appointed Arbitrator

## ACCEPTANCE OF RECEIVERSHIP

The duties of the Receiver, as set forth in the foregoing Order, are accepted and agreed to.

_____
Henry M. Nirenberg

Dated: _____, 2022

# EXHIBIT F

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND
FAMILY DIVISION

REBECCA MICHELLE MOSES,

      Plaintiff/Counter Defendant,      Case No.: 20-503106-DM
                                    Hon. Kameshia D. Gant

DAVID ZACHERY MOSES,

      Defendant/Counter Plaintiff.

| | |
|---|---|
| Jordan S. Dizik (P76470)<br>The Dizik Law Firm<br>Co-Counsel for Plaintiff<br>370 E. Maple Road-Ste. 300<br>Birmingham, MI 48009<br>(248) 712-1056<br>jordan@diziklaw.com | SERLIN, TRIVAX & ASSOCIATES, PC<br>David B. Trivax (P38798)<br>Attorney for Defendant<br>37911 W 12 Mile Road<br>Farmington Hills, MI 48331<br>(248) 633-2666<br>dtrivax@serlintrivax.com |
| Josh Faber (P76986)<br>Berlin Family Law Group PLLC<br>Co-Counsel for Plaintiff<br>901 Wilshire Drive-Ste. 580<br>Troy, MI 48084<br>(248) 655-7980<br>jfaber@berlinfamilylawgroup.com | LAW OFFICE OF MICHAEL A. ROBBINS<br>Michael A. Robbins (P33884)<br>Co-Counsel for Defendant<br>3910 Telegraph Road, Ste. 200<br>Bloomfield Hills, MI 48302<br>(248) 646-7980<br>mrobbins@michaelarobbins.com |

## **ORDER APPOINTING RECEIVER**

This matter having come before the Court following August 3, 2022 oral arguments on

Defendant's Emergency Motion to enter Order and the Court having granted Defendant's Motion

and being fully advised on the premises:

**NOW, THEREFORE, IT IS HERBY ORDERED**:

1.     Effective immediately, under MCR 2.622, Henry M. Nirenberg of Seyburn Kahn,

P.C., 2000 Town Center, Suite 1500, Southfield, MI 48075 (hereinafter "Receiver"), is

1

appointed as the Receiver of all of the following:

    (a)    the real properties situated at 10095 LaSalle Blvd, Huntington Woods, Michigan 48070, 7382 Yale, Lexington, Michigan 48450, and 3994 Arcadia Park Drive, Waterford, Michigan 48328 (collectively, the "Properties");

    (b)    all proceeds relating to such Properties; and

    (c)    all legal and equitable claims and causes of action, and rights to interim equitable and injunctive relief, including stays of eviction proceedings, arising from the sale or disposition of such Properties in violation of the Consent Order for Financial Status Quo and Mutual Injunction entered on October 14, 2020 (the "Injunction Order"), including without limitation, all rights and claims to enforce the Injunction Order and the Supplemental Arbitration Awards,

(everything identified in subparagraphs 1(a) through 1(c) above, collectively referred to as the "Receivership Estate"), together with full powers as Receiver of the Receivership Estate for the purpose of exercising the activities, duties and functions set forth in this Order.

2.    Rebecca Moses and David Moses shall cooperate with the Receiver in the transition of the management of the Receivership Estate and shall make available to the Receiver for inspection and copying all of their records concerning the Receivership Estate as shall be reasonably necessary for the Receiver to fulfill his activities, duties and functions under the terms of this Order.

## AUTHORITY OF RECEIVER

3.    Pursuant to the Court's inherent authority and MCR 2.622, the Receiver is hereby granted all powers and authority conferred by statutes and case law, to control, sell, encumber, take possession of, lease, liquidate, or compromise the Receivership Estate, subject to the Sales and Status Quo Conditions (defined below).

4.    The Receiver has express authority to sign as Receiver, on behalf of the Receivership Estate any checks, bank accounts, drafts, stocks, bonds, vehicle titles, or other instruments of title and said signature shall have the same legal effect as had an authorized

2

individual signed same on behalf of the Receivership Estate.

5.　　The Receiver has express authority to sign as Receiver, on behalf of the Receivership Estate, any listing agreements, offers to purchase, deeds, closing documents, instruments of title or other documents necessary to effectuate the sale, transfer, exchange and conveyance of the Receivership Estate, and said signature shall have the same legal effect as had an authorized individual signed same on behalf of the Receivership Estate.

6.　　The Receiver is authorized to market and sell the Receivership Estate property by private sale free and clear of all claims, liens, and encumbrances without redemption periods, after notice to all interested parties and in the case of real property, subject to the Sales and Status Quo Conditions. Any and all claims, liens, and encumbrances shall attach to the proceeds from any sale in the same rank, order and priority.

7.　　The Receiver is authorized in the exercise of his business judgment, to operate the Receivership Estate under any and all existing agreements that are currently in place between the Receivership Estate, and any third party, but is not authorized to sell any real property without obtaining prior approval of the Court.

## THE RECEIVERSHIP ESTATE

8.　　Immediately upon entry of this Order and continuing until the termination of the Receiver's appointment, the Receiver is authorized to take reasonable and appropriate actions to prevent waste and to preserve, manage, maintain, secure, lease and safeguard the Receivership Estate during the period of receivership. The Receiver, in the exercise of his business judgment, shall be empowered, but not obligated, to:

　　　a.　　Preserve, hold and manage the Receivership Estate, and perform all acts necessary to preserve its value, to prevent any loss, damage or injury;

　　　b.　　Prevent the withdrawal or misapplication of funds;

3

c.     Sue for, collect, receive, and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, documents, books, records, work papers, and records of amounts, including computer-maintained information, and other papers of the Receivership Estate;

d.     File, commence, petition, litigate, defend, compromise/settle, adjust, intervene in, dispose of, or become a party to any actions or proceedings, including eviction proceedings, fraud proceedings, contempt proceedings, quiet title actions, proceedings under any voidable transfer acts, and those under Title 11 of the United States Code, in state, federal or foreign court necessary to preserve the Receivership Estate or to carry out his duties pursuant to this Order. Such actions and proceedings may include any claims, causes of action, actions or proceedings relating to the Properties and the proceeds of such Properties;

e.     Choose, engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

f.     Serve and enforce Written Discovery and Subpoenas under the Michigan Court Rules to obtain information, documents and records pertaining to and on behalf of the Receivership Estate;

g.     Open one or more bank accounts as designated depositories for funds of the Receivership Estate. The Receiver may deposit all funds of the Receivership Estate in such designated accounts and shall make all payments and disbursements from the Receivership Estate from such accounts; and

h.     Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of the Court, or exercising the authority granted by this Order.

9.     Immediately upon entry of this Order and continuing until his discharge, the Receiver is authorized to take any reasonable and appropriate actions to prevent waste and to preserve, manage, maintain, secure, lease and safeguard the Receivership Estate during the receivership. Without limiting the generality of the foregoing, the Receiver, in the exercise of his business judgment, may:

a.     To the extent funds are available, pay such sums as are necessary for the preservation, upkeep, and security of the Receivership Estate;

b.     Allow the parties and their respective counsel access at reasonable times to inspect the Receivership Estate;

c.     Collect any unpaid or delinquent rents, revenues, issues, and profits, regardless of when accrued, and to prosecute collection or similar proceedings;

d.     To the extent funds are available, pay any real estate and personal property taxes and any other taxes or assessments against the Receivership Estate, as reasonably necessary to avoid forfeiture or loss;

e.     Enforce termination or approve any contracts and/or agreements regarding the Receivership Estate; and

f.     Sell all or any portion of the Receivership Estate, consistent with his authority under this Order and subject to the Sales and Status Quo Conditions.

10.     The Receiver is authorized to exercise all rights reserved or granted to the Receivership Estate under any mortgage, or under Michigan or Federal law.

11.     The Receiver is authorized to investigate any transfers or financial transactions relating to the Receivership Estate, to determine whether any such transactions were in violation of the Injunction Order, Supplemental Arbitration Award or otherwise unlawful or improper under applicable statute or law.

12.     The Receiver shall not be responsible for the preparation or filing of any tax returns for the Receivership Estate (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to provide the parties with information in the Receiver's possession which may be necessary for the parties to prepare and file tax returns.

### DIRECTIVES TO FINANCIAL INSTITUTIONS, EMPLOYERS AND OTHERS

13.     Pending further order of the Court, any financial or brokerage institution, business entity, or person, that holds, controls, or maintains custody of any escrow account, account or

asset, or has held, controlled, managed or maintained custody of any escrow account, account or asset owned by, in the name or for the benefit of the Receivership Estate, or that holds or maintains any proceeds of the Properties, shall:

    a.    Prohibit the parties and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of any such asset of the Receivership Estate except as directed by the Receiver;

    b.    Deny the parties and all other persons access to any safe deposit box that is titled in the name of the Receivership Estate, either individually or jointly with another person or entity;

    c.    Provide the Receiver, within five (5) business days of receiving a copy of this Order, a statement setting forth:

        i.    the identification number of each and every account or asset titled in the name, individually or jointly, of, or held on behalf of, or for the benefit of the Receivership Estate;

        ii.    the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed to close the account, and the name of the person or entity to whom such account or other asset was remitted;

    iii.    the identification of any safe deposit box that is either titled in the name of the Receivership Estate, or jointly with, another person or entity or is otherwise subject to access by the Receivership Estate; and

    iv.    upon request by the Receiver, promptly provide copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, and all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

14.    Any savings, bank or similar institutions receiving a copy of this Order shall accept the signature of the Receiver to withdraw any and all funds of the Receivership Estate that the

6

Receivership Estate have the right to withdraw from said institution with the same legal effect as had an authorized individual signed same on behalf of the Receivership Estate.

15.     Any savings, bank or similar institutions receiving a copy of this Order shall forthwith turn over to the Receiver, Henry M. Nirenberg, any and all contents of any safety deposit boxes, owned by or on behalf of or which contains any asset of the Receivership Estate.

**DELIVERY OF POSSESSION OF RECEIVERSHIP ESTATE TO RECEIVER**

16.     The Court commands the Sheriff of Oakland County, or any other court officer that the Receiver may choose to employ, to deliver, without delay, to the Receiver, possession of the Properties and the Receivership Estate, and if necessary use FORCE as required, and if any of the Properties are not voluntarily opened to use a locksmith for said purpose.  However, this is subject to the Sales and Status Quo Conditions.

17.     As soon as practicable after service of this Order upon the Parties, and any other person or entity served with a copy of this Order, subject to the Sales and Status Quo Conditions (defined below), he/she shall deliver to the Receiver:

    a.     Possession and custody of all funds, assets, property, and all other assets, owned beneficially or otherwise, wherever situated of the Receivership Estate;

    b.     Possession and custody of all documents, including without limitation, all purchase agreements, title documents, escrow agreements, and indemnification agreements, of the Receivership Estate, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), title documents and other papers;

    c.     Possession and custody of all precious metals, other commodities, funds, and other assets being held by or on the behalf of the Receivership Estate;

    d.     All keys, computer passwords, entry codes, and combination locks necessary to gain access or to secure access to any of the assets or documents of the Receivership Estate, including by not limited to; means of communications, account, computer systems, or other property; and

e.    Information identifying the accounts, properties or other assets or obligations of the Receivership Estate.

**POSSESSION OF DOCUMENTS AND RESTRAINT ON DESTRUCTION**

18.    Rebecca Moses and David Moses shall each cooperate with the Receiver in the transition of control of the Receivership Estate and shall make available to the Receiver for inspection and copying all of their records concerning the Receivership Estate as shall be reasonably necessary for the Receiver to fulfill his activities, duties, and functions under the terms of this Order.

19.    The Receiver is granted the power to take immediate possession of and to copy: all books, records, notes, memoranda, purchase agreements, title documents, escrow agreements, indemnification agreements, loan documents, deeds, bills of sale, canceled checks, checks, check ledgers, calendar notes, diary notes, notes, records, books, ledgers, electronically stored and computer data (including e-mail), tape recordings, and computer discs, or any other financial documents or financial information in whatever form belonging to the Receivership Estate, or any businesses owned or operated by the Receivership Estate.

20.    Rebecca Moses, and all persons or entities who receive notice of this Order by email, personal service, certified mail, overnight delivery or otherwise, including but not limited to, David Wolkinson, Tzedek Company, LLC, Lexiford Properties, LLC, and Waterton Properties, LLC, Kenneth R. Beams, PLLC, and any agent, employee, or representative of same, are prohibited, restrained, and enjoined from directly or indirectly destroying, mutilating, erasing, altering, concealing, or disposing of, in any manner, directly or indirectly, any documents that relate to the sale of the Properties, the disposition of the proceeds of sale of the Properties and/or the finances of the Receivership Estate.

21.    Rebecca Moses, and all persons or entities who receive notice of this Order by

8

email, personal service, certified mail, overnight delivery or otherwise, including but not limited to, David Wolkinson, Tzedek Company, LLC, Lexiford Properties, LLC, and Waterton Properties, LLC, Kenneth R. Beams, PLLC, and any agent, employee, or representative of same, shall surrender to the Receiver all monies currently in their possession that were proceeds of the sales of the Properties, whether currently or previously held in escrow or disbursed from escrow, or which otherwise belong to or are payable to the Receivership Estate.

### RESTRAINT ON TRANSFER OF RECEIVERSHIP ESTATE

22. Except as otherwise ordered by the Court, Rebecca Moses and all persons or entities who receive notice of this Order by email, personal service, certified mail, overnight delivery or otherwise, including but not limited to, David Wolkinson, Tzedek Company, LLC, Lexiford Properties, LLC, and Waterton Properties, LLC, Kenneth R. Beams, PLLC, and any agent, employee, or representative of same, are prohibited, restrained, and enjoined from directly or indirectly:

    a. Transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, entering on to, or otherwise disposing of the Receivership Estate or any of the Properties, except as otherwise ordered by the Court; and

    b. Filing, commencing, litigating, prosecuting, and continuing any summary proceedings to evict any tenants as to any of the Properties.

### DISTRIBUTION

23. To the extent funds are available, the Receiver may pay the ordinary expenses of the Receivership Estate, but may not distribute the funds in the Receivership Estate to a party to the action without an Order of the Court.

### RESTRAINT ON ACTION AGAINST RECEIVER AND RECEIVERSHIP ESTATE

24. Except by leave of the Court or the Receiver's exercise of his duties, obligations

9

and powers conferred in this Order or under Michigan law, during the pendency of the receivership, the parties, and all persons or entities who receive notice of this Order by email, personal service, certified mail, overnight delivery or otherwise, including but not limited to, David Wolkinson, Tzedek Company, LLC, Lexiford Properties, LLC, and Waterton Properties, LLC, Kenneth R. Beams, PLLC, and any agent, employee, or representative of same, be and hereby are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of the Receivership Estate, the Receiver, or the Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following:

    a.    Filing, commencing, prosecuting, litigating or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

    b.    Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, the Receivership Estate, any of the Properties, or attempting to foreclose, forfeit, alter or terminate any of the Receivership Estate interests in property, whether such acts are part of a judicial proceeding or otherwise;

    c.    Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution, order of eviction or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Receivership Estate or any of the Properties, wherever located, owned by or in the possession of a person or entity, or the Receiver, or any agent of the Receiver; and

    d.    Doing any act or thing to interfere with the Receiver taking control, possession or management of the Properties and the Receivership Estate or any property subject to the receivership, or to in any way interfere with the Receiver or the duties of the Receiver; or to interfere with the exclusive jurisdiction of the Court over the Properties and Receivership Estate, subject to the Sales and Status Quo Conditions.

25.    Until further order of the Court, the parties, their agents, and all persons or entities who receive notice of this Order by email, personal service, certified mail, overnight delivery or otherwise, including but not limited to, David Wolkinson, Tzedek Company, LLC, Lexiford

Properties, LLC, and Waterton Properties, LLC, Kenneth R. Beams, PLLC, and any agent, employee, or representative of same, are **RESTRAINED AND ENJOINED** from directly or indirectly transferring, encumbering, removing, expending, distributing, concealing, destroying, mutilating, damaging, erasing, altering, disposing of, or otherwise diminishing or causing harm to the Properties and any of the Receivership Estate, doing any act to interfere with the Receiver from taking control, possession, or management of the Properties and Receivership Estate (subject to the Sales and Status Quo Conditions), or to in any way interfere with the Receiver or the duties of the Receiver, or to interfere with the exclusive jurisdiction of the Court over the Properties and Receivership Estate.

### SALES AND STATUS QUO CONDITIONS

26.     Each of the following are defined herein as "Sales and Status Quo Conditions":

a.     Notwithstanding anything to the contrary in this Order, the Receiver shall not interfere with the valid occupancy of any occupants, residents, or tenants at any of the Properties whose occupancy, residence, or tenancy validly exists or existed immediately prior to the May 31, 2022 sales of the Properties.   Such occupancy, residence, or tenancy of such Properties on the date immediately prior to the May 31, 2022 sales of the Properties shall be preserved, unless otherwise modified by award/order of the Arbitrator or the Court; and

b.     Notwithstanding anything to the contrary in this Order, the Receiver shall not sell or cause the sale of any of the Properties without first obtaining approval for such sale(s) under an award/order entered by the Arbitrator or the Court.

### INSURANCE

27.     The parties shall be responsible for the maintenance of any liability, fire, theft, general and professional liability, title, and workers' compensation, vandalism, property damage or any other insurance required for the Receivership Estate. To the extent permissible, the Receiver and any petitioning secured creditor shall be named as additional insureds on all policies and as mortgagee or as their interests otherwise appear on all casualty policies, and the

11

Receivership Estate shall reasonably cooperate with the Receiver in obtaining the required insurance.

## LEASES AND CONTRACTS

28. The Receiver is authorized to execute, modify, amend, extend or terminate leases regarding the Receivership Estate, subject to any secured creditor's approval.

29. The Receiver shall not be liable for any claim, obligation, liability, action, cause of action, cost, or expense of the Receivership Estate arising out of or relating to events or circumstances occurring prior to this Order, including, without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of the Receivership Estate, and any liability to which the Receivership Estate is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use, or operation of the Receivership Estate (collectively, the "Pre-Receivership Liabilities"). Except as otherwise stated herein, the Receiver shall not be obligated to pay any of the Pre-Receivership Liabilities.

## REPORTS AND ACCOUNTINGS

30. The Receiver shall account for all receipts, disbursements and distributions of money and property of the Receivership Estate.

31. The Receiver shall file with the Court and serve on the parties and those interested who may have appeared, a periodic accounting of all receipts and disbursements concerning the performance of its duties under this Order and a final accounting upon discharge.

32. The Receiver shall file quarterly reports as to the status of the Receivership.

33. The Receiver shall file with the Court a final written report and final accounting of the administration of the Receivership Estate.

## COMPENSATION OF RECEIVER

34.    The Receiver shall receive reasonable compensation for his services.

35.    The Receiver shall also be entitled to reimbursement for reasonable fees and out-of-pocket expenses related to the performance of his duties as Receiver.

36.    All compensation of the Receiver is subject to final review and approval of the Court.

37.    The Receiver shall receive reasonable compensation for its services.   The Receiver's compensation shall be paid (1) first from the $50,000 in proceeds set aside from the marital estate in this case as referenced in Paragraph 5 of the Supplemental Arbitration Award of Arbitrator Kurt Schnelz, and then (2) from other proceeds, income, and assets of the marital estate in this case.  If there are insufficient funds to pay the Receiver's fees and expenses, Receiver may petition the court to determine the compensation to be paid and to decide which party, person, or entity (including any additional parties joined to this case) will be responsible for the payment of some or all of the Receiver's compensation.   Until further order from the Court, the Receiver shall receive compensation at the rate of $400.00 per hour for his services, $375.00 for Partners, $325.00 for Associates, and $100.00 - $160.00 per hour for the services of paralegals. The Receiver shall also be entitled to be reimbursed for reasonable fees and out-of-pocket expenses related to the performance of its duties as Receiver.  The Receiver may receive payment on a monthly basis, without further Court Order, provided no objections are filed with the Receiver within fifteen (15) days after notice is sent by electronic mail to all the parties.  In the event an objection is timely filed, the objecting party shall file a motion with the Court within seven (7) days after objecting to determine the propriety of the fees sought, or its objections will be waived.

13

### IMMUNITY OF RECEIVER

38.     The Receiver and his employees, agents, and attorneys, shall not be liable for any claim, obligation, liability, action, cause of action, cost, or expense of the Receivership Estate arising out of or relating to Pre-Receivership Liabilities.

39.     The Receiver and his employees, agents, and attorneys, shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their intentional tortious acts, breaches of fiduciary duty, gross negligence, gross or willful misconduct, acts committed in bad faith, malicious acts, and/or the failure to comply with the Court's Orders.

### ENVIRONMENTAL LANGUAGE

40.     The Receiver shall not be liable for the payment of governmental fines or penalties related to environmental hazards contained within the structures of any property of the Receivership Estate or upon or under the land that comprises any property of the Receivership Estate, nor shall the Receiver be liable for the remediation of any environmental hazards (either naturally occurring or man-made) that are discovered within the structures or upon or under the land that comprises any property of the Receivership Estate.  Nothing herein shall be interpreted or deemed to create in the Receiver personal liability for such charges or remediation costs.  For purposes of this Order, "environmental hazards" shall include, but not be limited to, *biological contaminants* (bacteria, viruses, fungi (including all molds), mildew, dust, dust mite allergen, animal dander, pollen, organic waste, cockroaches); *volatile organic compounds* (paints, lacquers, varnishes, paint strippers, cleaning supplies, pesticides, building materials and furnishings, office equipment); *asbestos*; *formaldehyde* (including pressed wood products that contains formaldehyde, plywood and resins); *lead*; *radon*; *pesticides*; *chemicals* (including

14

chemical storage tanks, whether properly stored or illegally disposed of); *batteries*; *tires*; *petroleum and petroleum by-products*; all *industrial* and *manufacturing by-products*; and *contaminated soil*. To the extent that any fines, penalties or similar governmental charges are assessed against any property of the Receivership Estate, or to the extent that remediation costs are mandated and required, such charges, assessments, and costs shall be the sole responsibility of the parties or, in the event of a separate agreement (e.g. a lease agreement), the responsibility of the party who assumed such responsibilities under the terms of such agreement.

## BOND AND ACCEPTANCE OF RECEIVER

41.     The Receiver's duty to act in that capacity is subject to the filing of a written acceptance of the terms of this Order. Upon acceptance, the Receiver shall be bound by the terms of this Order, and all obligations imposed hereby.

42.     Bond requirement is waived, pursuant to MCR 2.622(G)(4), insofar as a substantial amount of the Receivership Estate cannot be sold without further order of the Court.

## RECORDATION

43.     The Register of Deeds shall accept a certified copy of this Order for recording against the Receivership Estate, any of the Properties, and any other real property in which the Receiver determines that the Receivership Estate have an interest.

## REMOVAL OF RECEIVER

44.     After notice and hearing, the Court may remove the Receiver by Order for good cause shown. If the Receiver is removed, the Court may appoint a successor receiver unless the Court determines that the receivership is no longer practical or required.

45.     In the discretion of the Receiver, the Receiver may notify the Court and the parties that the receivership is no longer practical. Upon such event, the Receiver's duties shall

15

terminate upon entry of an Order of the Court terminating the receivership.

46.     Within forty-five (45) days after the termination of the receivership for any reason, the Receiver shall submit a final accounting, with copies to be furnished to the parties to this action.  Upon the Court's approval of the Receiver's final accounting, the Receiver shall be discharged of any further obligations of the receivership.

## RETENTION OF JURISDICTION

47.     The Court shall retain jurisdiction to resolve disputes under or related to this Order.

## MISCELLANEOUS

48.     The entry of this Order is without prejudice to any and all rights of the Receivership Estate to any claim, right, or defense, including construction liens, redemption rights and all foreclosure rights as to any future proposed sale by the Receiver or the Court.

49.     This Order may be amended with or without cause, either upon the stipulation of the Receiver and the parties, or, after a motion and hearing.

50.     If there exists any inconsistency between any prior Orders of the Court and the terms of this Order, the terms of this Order shall control.

51.     This Order shall be filed with the Court to seek its confirmation and approval.

**IT IS SO ORDERED.**

/s/ Kameshia D. Gant
August 10, 2022
Family Division Judge
KAMESHIA D. GANT/LMD

16

Approved as to form:

BERLIN FAMILY LAW GROUP, PLLC
Approved as to form only and pursuant to
the Court's order and ruling:

*Joshua A. Faber*

Joshua Faber (P76986)
Co-Counsel for Plaintiff

SERLIN, TRIVAX &ASSOCIATES, PC

David B. Trivax (P38798)
Attorney for Defendant

THE DIZIK LAW FIRM
Approved as to form only and pursuant to
the Court's order and ruling:

*Jordan S. Dizik*

Jordan S. Dizik (P76470)
Co-Counsel for Plaintiff

LAW OFFICE OF MICHAEL A. ROBBINS

Michael A. Robbins (P33884)
Co-Counsel for Defendant

17